[Nos. 6032-9-II; 6171-6-II.   Division Two.   February 28, 1984.]

THE STATE OF WASHINGTON, *Respondent*, v. RAY
CHARLES HARRIS, ET AL, *Appellants*.

*Ray Charles Harris,* pro se, and *Anthony Haselman,* for appellants.

*William H. Griffies, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Deputy,* for respondent.

REED, J.—Defendants Jamie Churchill Gibbs and Ray Charles Harris appeal their convictions on two counts of first degree rape. Finding the counts should have been severed for trial, we reverse and remand for a new trial.

On May 12, 1981, Patricia Smith[1] and another couple got into a car with Gibbs and Harris. Harris was the driver. Smith testified that the men refused to let her out of the car after dropping off the couple. After driving around for awhile, they eventually arrived at Gibbs' house where, throughout the night, defendants alternated holding Smith down and having sexual intercourse with her. In the morning, defendants let Smith leave the house. She notified the police, was examined at the hospital and eventually identified the defendants as her assailants. An information was filed charging first degree rape.

At 2 a.m. on June 2, 1981, Tina Jones was in a fight outside a tavern when a car driven by Harris and containing

---

[1]We have used fictitious names for the complaining witnesses.

Gibbs and another unidentified male, pulled up and offered her a ride. She accepted but instead of taking her home as she requested, Harris drove to a dead–end street. After she was forced into the backseat, defendants and the other man alternated forcing sexual intercourse and other indignities on her. Eventually, but not until Gibbs raped her again en route, she was let out of the car in a residential area. The next morning she notified the police and was examined at the hospital. She identified Harris and Gibbs as two of the men. The Smith information was amended to charge a second count of rape in the first degree on Jones. Unaccountably there was no omnibus hearing, so that on the morning of trial several motions were heard, including defendants' motion to sever the two counts. Defendants assign error to denial of the motion.

At trial, defendants' principal defense to both charges of rape was consent of the victim. There was conflicting testimony about the circumstances of both incidents, particularly on the issue of consent. The jury believed the victims' versions and found defendants guilty of both counts. Defendants also claim several reversible errors were committed at trial.

There is no merit to defendants' contention that it was error to deny their initial motion for severance. CrR 4.4(a)(1)[2] requires such motions to be made before trial. CrR 4.5(d) governing omnibus procedures, warns that fail-

---

[2]CrR 4.4(a) and (b) provides as follows:

"**(a) Timeliness of Motion—Waiver.**

"(1) A defendant's motion for severance of offenses or defendants must be made before trial, except that a motion for severance may be made before or at the close of all the evidence if the interests of justice require. Severance is waived if the motion is not made at the appropriate time.

"(2) If a defendant's pretrial motion for severance was overruled he may renew the motion on the same ground before or at the close of all the evidence. Severance is waived by failure to renew the motion.

"**(b) Severance of Offenses.** The court, on application of the prosecuting attorney, or on application of the defendant other than under section (a), shall grant a severance of offenses whenever before trial or during trial with consent of the defendant, the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense."

ure to raise such an issue at the omnibus hearing may constitute waiver of such issue. A motion for severance brought on the morning of trial is not "before trial" as that term is used in CrR 4.4(a). Defendants having waived their pretrial motion to sever, they cannot now complain.

The defendants' later renewals of that motion should have been granted, however, because the actual prejudice from joinder of the counts surfaced during trial. For example, following his cross examination of Harris the prosecuting attorney remarked: "That's all I have. Don't you think it's somewhat coincidental that you have been accused of two rapes within two–and–a–half weeks of each other?" Although the court sustained a defense objection to this statement,[3] and admonished the State's attorney, defendants' prompt motions to sever and for a mistrial were denied. Nevertheless, in his summation to the jury and over objection the prosecutor was allowed to argue that "both of these victims were raped within two–and–a–half weeks of each other" and "but its all consentual [*sic*], both of these rapes, which are only two–and–a–half weeks from each other are both consentual [*sic*]." Still later, in his rebuttal, he twice refers to the "coincidental two–and–a–half weeks." Defendants claim it was a manifest abuse of discretion to deny their renewed motion for severance when evidence of actual prejudice came to the fore, and it became evident that the "interests of justice" required separate trials. CrR 4.4(a)(1).

First, it is conceded that CrR 4.3(a)(1) authorizes joinder of both counts because they are of the same or similar character. It often has been said that ours is a liberal joinder rule and, if counts are *otherwise properly joined,* a refusal to sever will be reversed only for a manifest abuse of discretion. *See, e.g., State v. Thompson,* 88 Wn.2d 518, 564 P.2d 315 (1977); *State v. Weddel,* 29 Wn. App. 461, 629 P.2d 912 (1981). It also has been held, however, that joinder must not be utilized in such a way as to prejudice a

---

[3]The question, being rhetorical only, did not require an answer.

defendant. *State v. Smith,* 74 Wn.2d 744, 446 P.2d 571 (1968), *vacated in part,* 408 U.S. 934 (1972). In *Drew v. United States,* 331 F.2d 85, 88 (D.C. Cir. 1964), alluded to in *Smith,* the court enumerates the ways in which a defendant can be prejudiced by joinder. They are:

> The argument against joinder is that the defendant may be prejudiced for one or more of the following reasons: (1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find. A less tangible, but perhaps equally persuasive, element of prejudice may reside in a latent feeling of hostility engendered by the charging of several crimes as distinct from only one. Thus, in any given case the court must weigh prejudice to the defendant caused by the joinder against the obviously important considerations of economy and expedition in judicial administration.

The *Smith* court then lists some of the factors which may offset or neutralize the prejudicial effects of joinder:

> (1) The strength of the State's evidence on each count, (2) clarity of defenses to each count, (3) the court properly instructs the jury to consider the evidence of the crime, *and* (4) the admissibility of the evidence of the other crimes even if they had been tried separately or never charged or joined.

Here, despite an instruction to consider the counts separately, there was extreme danger that defendants would be prejudiced in all of the ways considered in *Drew.* In any event, the prejudice–mitigating factor that evidence of each rape would be admissible in a separate trial for the other, is glaringly absent. This being so, there is a clear violation of the rule prohibiting use of evidence of other crimes or misconduct in order to convict. ER 404(b). *See State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982); *State v. Goebel,* 40 Wn.2d 18, 240 P.2d 251 (1952).

■ The State argues that each rape was part of a common scheme or plan, thus coming within the "*Goebel* exception" for the admission of such evidence, now codified in ER 404(b). In its effort to justify admission the State points out that "both victims voluntarily entered vehicles with the defendants and in both instances the defendants drove the victims against their will to a location where the rapes occurred." In so urging, the State has fallen into the common error of equating acts and circumstances which are merely similar in nature with the more narrow common scheme or plan. As noted in *Saltarelli*, at 364, quoting from *United States v. Goodwin*, 492 F.2d 1141, 1155 (5th Cir. 1974), only too often this error leads to a lack of analysis and reliance on the exceptions as "'magic passwords whose mere incantation will open wide the courtroom doors to whatever evidence may be offered in their names.'" *Saltarelli* held that, under ER 404(b), evidence of an otherwise unconnected sexual assault was not admissible to prove intent, such not being an issue where intercourse was admitted and consent of the victim was the sole issue.

Common scheme, plan or design has been described as:

an antecedent mental condition which evidentially points to the doing of the act planned. Something more than the doing of similar acts is required in evidencing design, as the object is not merely to negative an innocent intent, but to prove the existence of *a definite project* directed toward completion of the crime in question.

(Italics ours.) Slough & Knightly, *Other Vices, Other Crimes*, 41 Iowa L. Rev. 325, 329–30 (1956).

Under this definition, it is obvious the two rapes here do not qualify as links in a chain forming a common design, scheme or plan. At most they show only a propensity, proclivity, predisposition or inclination to commit rape. Such evidence is explicitly prohibited by ER 404(b). *Cf. State v. Saltarelli, supra.* Nor, as the State has also urged, was evidence of each rape necessary to prove the absence of mistake or accident. Neither defendant claimed mistake or accident as a defense and the State's argument borders on

the frivolous.

Recognizing the "great potential for prejudice inherent in evidence of prior sexual offenses" the *Saltarelli* court, at page 364, draws upon Slough and Knightly for the following pertinent observation:

When deciding the issue of guilt or innocence in sex cases, where prejudice has reached its loftiest peak, our courts have been most liberal in announcing and fostering a nebulous exception, offering scant attention to inherent possibilities of prejudice. Just when protection is most needed, the rules collapse.

41 Iowa L. Rev. at 334.

Because of the inherent prejudice to these defendants from the joinder of two similar rape counts, separated only by 2½ weeks in time, where proof of one could not have been been adduced at a separate trial for the other, it would have been an abuse of discretion to deny defendants' original motion to sever had it been timely. In light of the actual prejudice to defendants engendered by the prosecutor's suggestions and remarks, it was an abuse of discretion to deny defendants' renewed motions. A new trial must be granted.

Because we order a new trial we must address defendants' contention that the evidence on each count was not sufficient to prove a kidnapping as an element of first degree rape, *i.e.*, that the State did not prove beyond reasonable doubt a separate and distinct kidnapping that was independent from the rapes themselves.

■ The leading case on this issue is *State v. Green,* 94 Wn.2d 216, 616 P.2d 628 (1980). In *Green,* the court had to consider whether there was sufficient evidence of a kidnapping as an essential element of the crime of aggravated murder in the first degree. In doing so, the court laid down two principles of law. First, the court held that evidence of restraint and movement merely incidental to a homicide is insufficient to establish kidnapping as an element of the murder. Whether *actions are merely incidental to or distinct* from the actual crime charged is determined from all

the facts and circumstances surrounding the crime and the nature of the acts and their relation to the crime. *Green,* 94 Wn.2d at 227. Second, the court in *Green* changed the standard for weighing the sufficiency of the evidence of crimes serving as essential elements of another crime. Based on *Jackson v. Virginia,* 443 U.S. 307, 61 L. Ed. 2d 560, 99 S. Ct. 2781 (1979), the test is no longer whether there is substantial evidence to support the essential element of the crime but rather "whether, after viewing the evidence most favorable to the State, *any rational trier of fact* could have found the essential elements of kidnapping *beyond a reasonable doubt."* *Green,* 94 Wn.2d at 221–22. Therefore, under *Green,* we must determine whether, in viewing the evidence most favorable to the State, any rational trier of fact could have found the essential elements of kidnapping as to both victims, beyond a reasonable doubt.

Instruction 13 stated the proof required for kidnapping as follows:

> Kidnapping means the intentional abduction of another person.
> Abduct means to restrain a person by secreting or holding the person in a place where that person is not likely to be found. Restrain means to restrict a person's movements without consent and without legal authority in a manner which interferes substantially with that person's liberty. Restraint is without consent if it is accomplished by physical force, intimidation or deception.

Defendants do not challenge this instruction. Rather, they argue, based on *Green,* that there was no abduction as defined in the instruction because each victim voluntarily got in the car and the restraint and movement before and during the rapes were merely incidental to the rapes. The evidence, however, is to the contrary.

The testimony of victim Smith was that she was kept in the car against her will for a period of time prior to being raped. In addition, she was taken forcibly into Gibbs' house and forced to remain captive there throughout her ordeal.

Considering this evidence in a light most favorable to the

State, a rational trier of fact could have found that she was intentionally abducted separate from the rape by being physically restrained without her consent, both in the car and at Gibbs' house—places where she likely would not be found.

The evidence of kidnapping of victim Jones, although not as compelling, is also sufficient. She testified that defendants told her they would take her home; instead they began driving in the opposite direction from her house. When she told them she lived the other way, they told her they had to drop off someone first. Instead, defendants took her to a dead–end gravel road and stopped the car, after which she was tumbled into the backseat and sexually violated. This is sufficient evidence to establish an intentional abduction independent from the rape. *Cf. State v. Allen,* 94 Wn.2d 860, 621 P.2d 143 (1980). Unlike in *Green* where the victim was moved only 20 to 50 feet to a semipublic place, Jones was moved a much greater distance, restrained by deception and intimidation for a longer period of time, and taken and held in a secluded place where she was not likely to be found. *Cf. State v. Missmer,* 72 Wn.2d 1022, 435 P.2d 638 (1967), *cert. denied,* 393 U.S. 885 (1978); *State v. Allen, supra.* This evidence was sufficient for a rational trier of fact to find beyond a reasonable doubt that all the elements of a kidnapping were present.

We must point out that defendants' reliance on *State v. Johnson,* 92 Wn.2d 671, 600 P.2d 1249 (1979), *State v. Regan,* 28 Wn. App. 680, 625 P.2d 741 (1981), and *State v. Ingham,* 26 Wn. App. 45, 612 P.2d 801 (1980) is misplaced. In those cases, the issue was whether there was independent proof necessary to preclude *merger* of a kidnapping charge with a rape charge based on kidnapping. This case does not involve merger; defendants were not separately charged with nor convicted of kidnapping in addition to rape.

Finally, defendants challenge the trial court's refusal to admit evidence of the past sexual behavior of victim Smith. The defense offered to prove that two witnesses would tes-

tify that she had a reputation for "sleeping around." In our view the trial judge properly applied the standards of RCW 9A.44.020 as interpreted in *State v. Hudlow,* 99 Wn.2d 1, 659 P.2d 514 (1983), and did not abuse his discretion. Accordingly, this assignment of error is not well taken.

Defendants' other assignments of error, including those contained in their pro se brief, either have no merit or refer to matters which should not occur on retrial.

Reversed and remanded for new trial.

PETRICH, C.J., and PETRIE, J., concur.