[No. 18347-8-I. Division One. January 17, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. PATRICIA ANN WATKINS, *Appellant.*

WILLIAMS, J. Pro Tem., concurs in the result only.

*Rita Griffith* and *Mark W. Muenster* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Sally Stanfield, Deputy,* for respondent.

PEKELIS, J.—Patricia Watkins appeals from her conviction for five counts of robbery in the first degree. She contends that the trial court erred in denying her motion for severance of counts, her motion to suppress in–court identifications, and her motions for a mistrial and for a new trial based on prosecutorial misconduct. She also contends that the trial court erred in refusing to give her proposed jury instruction on eyewitness identification and in calculating her offender score.

I

In November and December of 1985, a small black woman robbed four convenience stores at gunpoint. Patricia Watkins was charged with these robberies.

During each robbery, the store cashier activated the store's security camera, and the pictures taken were admitted into evidence at Watkins' trial. Each of the four cashiers identified Watkins in court as the person who had robbed them. The cashiers also identified clothing and glasses seized from Watkins as similar to items worn by the

robber and a gun taken from Watkins' apartment as similar to the one carried by the robber.

Watkins testified that she committed the four convenience store robberies under duress. On November 25, 1985, she stopped at a rock house and smoked cocaine offered to her by a man called Louis. Afterward, Louis told her he needed money to pay for the cocaine and suggested she engage in prostitution. When she refused, Louis struck her and dragged her to the car by her hair. Louis then forced her to commit two armed robberies, threatening to kill her if she did not cooperate. On another occasion, December 9, 1985, Louis came to her apartment and threatened to break down her door if she did not let him in. Using physical force, Louis forced her to leave with him and to commit a third armed robbery and, under similar circumstances, to commit a fourth robbery on the following day, December 10.

In addition to the convenience store robberies, an additional count charged Watkins with robbing two individuals. According to eyewitness testimony, a small black woman requested a ride from Denise Schwind on December 3, 1985, and Schwind agreed. After Schwind drove a short distance, the woman threatened her with a knife and took her wallet and a diamond. The woman then walked over to Sharilyn Ranko's car, but left almost immediately and approached Harold Teter, who was just across the street. Teter agreed to give her a ride and she got in his car. When the woman threatened to pull her knife, Teter allowed her to take his billfold.

Schwind and Teter viewed a pretrial lineup and tentatively selected Watkins as the person who robbed them. Defense counsel moved at trial to suppress in–court identifications by Schwind and Teter because prior to the lineup Schwind was shown a montage composed of individual photographs and Teter a composite drawing. The court denied the motions, and all three of the eyewitnesses identified Watkins in court as the woman who robbed Schwind and Teter.

Both pretrial and at trial Watkins moved to sever the four convenience store robbery counts from the car robbery count. These motions were denied. The court also refused to give the instruction on eyewitness identification requested by the defense.

After the prosecutor's cross examination of Watkins, defense counsel moved for a mistrial, contending that the prosecutor's questions implicated Watkins' credibility and her right to remain silent. The motion was denied. After the jury returned a verdict of guilty on all five counts, defense counsel moved for a new trial based on the prosecutor's comments during closing argument, and the court's denial of his motion for severance. The court denied the motion.

Watkins was given an exceptional sentence downward of 92 months for each offense, the sentences to run concurrently. The trial judge arrived at a standard range of 132 to 168 months by counting her other current offenses separately, thereby arriving at an offender score of 8.

II

Watkins contends that the trial court erred in denying her pretrial motion to sever the car robbery count from the convenience store counts. CrR 4.4(b) provides that "[t]he court . . . shall grant a severance of offenses whenever before trial or during trial with consent of the defendant, the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense." A motion to sever brought under CrR 4.4(b) focuses on potential prejudice to the defendant notwithstanding proper joinder. *State v. Gatalski,* 40 Wn. App. 601, 606, 699 P.2d 804, *review denied,* 104 Wn.2d 1019 (1985).

Prejudice may result if the defendant is embarrassed in the presentation of separate defenses, or if use of a single trial invites the jury to cumulate evidence to find guilt or infer a criminal disposition. *State v. Smith,* 74 Wn.2d 744, 754–55, 446 P.2d 571 (1968), *vacated in part,* 408 U.S. 934,

33 L. Ed. 2d 747, 92 S. Ct. 2852 (1972), *overruled on other grounds in State v. Gosby,* 85 Wn.2d 758, 539 P.2d 680 (1975); *State v. Redd,* 51 Wn. App. 597, 603, 754 P.2d 1041, *review denied,* 111 Wn.2d 1008 (1988). In determining whether the potential for prejudice requires severance, relevant factors include (1) the strength of the State's evidence on each count, (2) the clarity of defenses as to each count, (3) whether the trial court properly instructed the jury to consider the evidence of each crime, and (4) the admissibility of evidence of the other crimes. *Gatalski,* 40 Wn. App. at 607.

A trial court's refusal to sever is reversible only for a manifest abuse of discretion. *State v. Harris,* 36 Wn. App. 746, 749, 677 P.2d 202 (1984). On appeal, the defendant bears the burden of demonstrating that the trial court's refusal was an abuse of discretion. *State v. Robinson,* 38 Wn. App. 871, 881, 691 P.2d 213 (1984), *review denied,* 103 Wn.2d 1015 (1985).

Watkins contends that the first prejudice–mitigating factor cuts in her favor because the State's evidence was relatively strong on the convenience store counts but weak on the car robbery count. We disagree. The evidence on the car robbery count was strong since three eyewitnesses identified Watkins as the woman who committed the robberies charged in that count.[1]

As to the second factor, Watkins argues that she was prejudiced in the presentation of her defenses by the court's refusal to sever. In the convenience store robberies her defense was duress while her defense to the car robbery was mistaken identity. She contends she would have exercised her right to remain silent had the car robbery been tried separately.

■■ However, a defendant's desire to testify only as to some, but not all, the counts is an insufficient reason to require severance. *State v. Weddel,* 29 Wn. App. 461, 467,

---

[1]Watkins also assigns error to the trial court's admission of in–court identifications by Schwind and Teter. We resolve this issue against Watkins herein.

629 P.2d 912, *review denied,* 96 Wn.2d 1009 (1981). Severance is required only if a defendant makes a convincing showing that she has important testimony to give concerning one count and a strong need to refrain from testifying about another. *Weddel,* 29 Wn. App. at 467. In addition, mutually antagonistic defenses will not support a motion for severance unless the defendant demonstrates prejudice. *State v. Grisby,* 97 Wn.2d 493, 508, 647 P.2d 6 (1982), *cert. denied,* 459 U.S. 1211, 75 L. Ed. 2d 446, 103 S. Ct. 1205 (1983). Watkins has not shown that she has a strong need to refrain from testifying about the car robbery or how the presentation of separate defenses prejudiced her.

Although the jury was instructed to consider each count separately, Watkins contends that if this third factor were sufficient to overcome prejudice, there would be no need for CrR 4.4(b). Her argument would have more apparent merit if this factor were the entire test. However, it is but one factor in determining whether severance is required. The fact the trial court in Watkins' case properly instructed the jury to consider each count separately is appropriately considered together with the other factors. *See State v. Robinson,* 38 Wn. App. 871, 883, 691 P.2d 213 (1984), *review denied,* 103 Wn.2d 1015 (1985); *Redd,* 51 Wn. App. at 604.

The final factor to assess, and frequently the most difficult, is whether evidence of each count would be cross admissible under ER 404(b). In determining the admissibility of other crimes under ER 404(b), a trial court must (1) determine that evidence is relevant to an issue such as identity or absence of mistake; (2) determine that any prejudicial effect is outweighed by the probative value; and (3) properly limit the purpose for which the jury may consider the evidence. *Gatalski,* 40 Wn. App. at 607–08, construing *State v. Saltarelli,* 98 Wn.2d 358, 655 P.2d 697 (1982); *see also State v. Robtoy,* 98 Wn.2d 30, 653 P.2d 284 (1982).

The trial court determined that the evidence of each crime would be cross admissible because evidence of the car robbery was relevant for the purpose of proving lack of mistake in the convenience store robberies, and evidence of

the convenience store robberies was relevant to prove identity in the car robbery. We agree that proof that Watkins committed the car robbery without duress tends to negate her duress defense to the convenience store robberies. Thus, the trial court correctly determined that evidence of the car robbery was relevant to a material issue, namely Watkins' intent or the lack of accident in the commission of the convenience store robberies.

In the car robbery count, the trial court also correctly determined that the identity of the robber was the relevant issue for purposes of an ER 404(b) analysis since Watkins' defense was that she was not the person who committed this crime. However, Watkins' participation in the convenience store robberies has no probative value in determining the identity of the car robber. Evidence is relevant to the issue of identity only if

> [t]he method employed in the commission of both crimes [is] *so unique* that mere proof that an accused committed one of them creates *high probability* that he also committed the act charged.

*State v. Smith,* 106 Wn.2d 772, 777, 725 P.2d 951 (1986) (quoting *State v. Laureano,* 101 Wn.2d 745, 764, 682 P.2d 889 (1984)). The only similarity between the convenience store and car robberies is that they were committed by a small black woman. There is no similarity in the methods of commission of the convenience store and car robberies. Thus, the trial court erroneously determined that evidence of the convenience store robberies would have been admissible under ER 404(b) if Watkins had received separate trials.[2]

---

[2]The State argues the trial court can nonetheless be upheld because evidence of the convenience store robberies would be relevant to prove that Watkins was in the neighborhood at the time the car robbery was committed, citing *State v. Weddel,* 29 Wn. App. 461, 466, 629 P.2d 912, *review denied,* 96 Wn.2d 1009 (1981). In *Weddel,* the defendant's presence in the neighborhood where the crime occurred was a significant issue because he lived 70 miles away and asserted that he was at home at the time the crime was committed. *Weddel,* 29 Wn. App. at 466. In contrast, Watkins lived in the neighborhood where the car robbery

A trial court abuses its discretion when its exercise of discretion is based on untenable grounds or reasons, or is manifestly unreasonable. *In re Schuoler,* 106 Wn.2d 500, 512, 723 P.2d 1103 (1986) (citing *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 26, 482 P.2d 775 (1971)). Clearly, the trial court here erroneously analyzed the fourth factor as to the car robbery count, and, in so doing, reached its decision to deny the motion to sever, at least in part, on untenable grounds.

In both *State v. Ramirez,* 46 Wn. App. 223, 226, 730 P.2d 98 (1986) and *State v. Harris,* 36 Wn. App. at 752, the court held that where evidence of one count would not be admissible in a separate trial on the other count, denial of a defendant's motion to sever not only constituted an abuse of discretion, but also required reversal. In *Harris,* the court's determination that a new trial was necessary was made "[i]n light of the *actual* prejudice to defendants engendered by the prosecutor's suggestions and [improper] remarks". (Italics ours.) *Harris,* 36 Wn. App. at 752. Without explanation or analysis, the court in *Ramirez* extended the rule of *Harris* and required a new trial in circumstances where there were no events actually prejudicing the defendant. *Ramirez,* 46 Wn. App. at 226.

■ We see no reason in law or logic to establish a rule that misapplication of this particular prong of the prejudice-mitigating test should automatically lead to the conclusion that a new trial is required.[3] There is no reason to

---

occurred, and there were thus other means available of proving that Watkins was in the neighborhood.

[3]We know of no court that has held that any one factor is necessarily preeminent. Rather, all of the factors together are a means of determining whether potential prejudice to a defendant requires severance and must be assessed in that light. *See Gatalski,* 40 Wn. App. at 607. Thus, arguably, it would be a proper exercise of the trial court's discretion to conclude that evidence of each count would *not* be cross admissible, but that severance was still not required based on the outcome of the other three factors. *See Gatalski,* 40 Wn. App. at 609 n.6; *State v. Standifer,* 48 Wn. App. 121, 127 n.2, 737 P.2d 1308, *review denied,* 108 Wn.2d 1035 (1987).

preclude a harmless error analysis. Even in pure ER 404(b) cases, evidentiary errors under the rule do not necessarily lead to reversal. *See, e.g., State v. Jackson,* 102 Wn.2d 689, 695, 689 P.2d 76 (1984); *Robtoy,* 98 Wn.2d at 44. Only if the appellate court determines that, within reasonable probabilities, the outcome of the trial would have been different had the errors not occurred is the error deemed reversible error. *Jackson,* 102 Wn.2d at 695. Consistent with this rule, we conclude that misapplication of ER 404(b) in severance cases does not compel a new trial where, within reasonable probabilities, the error is harmless.

Here, three eyewitnesses identified Watkins in court as the woman who robbed Schwind and Teter.[4] In light of the strength of this identification evidence, we conclude that the outcome of Watkins' trial on the car robbery count would not have been different had that count been tried separately. Thus, the court's failure to sever the car robbery count from the convenience store counts was harmless error.

### III

Watkins next contends that the trial court erred in denying her motion for a mistrial, arguing that the prosecutor impermissibly inquired into postarrest silence when he questioned her regarding the fact that she told the police she didn't recognize the person in a photograph "as opposed to telling [them] the Louis story." The State contends that the prosecutor inquired into prearrest silence only.

The United States Supreme Court has held that although a defendant's postarrest silence may not be used for impeachment purposes, prearrest silence may be used to impeach a defendant's credibility. *Jenkins v. Anderson,* 447 U.S. 231, 65 L. Ed. 2d 86, 100 S. Ct. 2124 (1980). Our courts agree. *See State v. Hamilton,* 47 Wn. App. 15, 20–21, 733 P.2d 580 (1987).

---

[4]See footnote 1.

In support of her contention that she was in custody during the time period covered by the prosecutor's questions, Watkins relies on the "probable cause to arrest" standard enunciated in *State v. Dictado,* 102 Wn.2d 277, 290–91, 687 P.2d 172 (1984). We note, however, that in *State v. Harris,* 106 Wn.2d 784, 725 P.2d 975 (1986), *cert. denied,* 480 U.S. 940, 94 L. Ed. 2d 781, 107 S. Ct. 1592 (1987) the Washington Supreme Court determined that *Berkemer v. McCarty,* 468 U.S. 420, 82 L. Ed. 2d 317, 104 S. Ct. 3138 (1984) modified the "probable cause to arrest" standard used to determine when *Miranda*[5] safeguards apply. Thus, we apply the *Berkemer* standard to determine if Watkins was in custody.

■ In *Berkemer,* the Supreme Court stated that "the safeguards prescribed by *Miranda* become applicable as soon as a suspect's freedom of action is curtailed to a 'degree associated with formal arrest.'" *Berkemer,* 468 U.S. at 440 (quoting *California v. Beheler,* 463 U.S. 1121, 1125, 77 L. Ed. 2d 1275, 103 S. Ct. 3517 (1983) (per curiam)). "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer,* 468 U.S. at 442.

The encounter at issue in Watkins' case occurred when Detective Gordon Barnett went to Watkins' apartment to determine if she was the person in a photograph taken during the convenience store robberies. As Watkins was leaving her apartment building, Barnett approached her, showed her the photograph and asked her if she recognized the person in it. She said she did not. Under these facts, a reasonable person would not understand Detective Barnett's inquiry as curtailing one's freedom to a degree associated with formal arrest. We conclude that Watkins was not in custody at the time of Barnett's inquiry, and thus, the prosecutor's question did not violate Watkins' Fifth Amendment right to silence.

---

[5]*Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, 10 A.L.R.3d 974 (1966).

## IV

Watkins also contends that the trial court erred in denying her motions for a mistrial and for a new trial. The motions were based on comments by the prosecutor during cross examination and closing argument which she contends impugned her credibility.

When defense counsel fails to request a curative instruction, appellate courts will not address a claim of prosecutorial misconduct unless the misconduct is flagrant and ill intentioned. *State v. Charlton,* 90 Wn.2d 657, 661, 585 P.2d 142 (1978). The defendant bears the burden of establishing that the comments were improper. *State v. Hughes,* 106 Wn.2d 176, 195, 721 P.2d 902 (1986).

Watkins' counsel at trial objected to some of the comments, but not all, and neither moved to strike nor requested a curative instruction. We have reviewed the prosecutor's comments and do not view them as improper, let alone flagrant and ill–intentioned misconduct. We conclude there was no prosecutorial misconduct.

## V

Watkins characterizes her proposed instruction on eyewitness identification as a "cautionary" instruction and argues that as such it is not an impermissible comment on the evidence. The proposed instruction is very similar to the so called *Telfaire*[6] instruction.

Although our Supreme Court has not ruled on the appropriateness of the *Telfaire* instruction, *see State v. Laureano,* 101 Wn.2d 745, 768, 682 P.2d 889 (1984), this court has repeatedly ruled that it is impermissibly slanted and a comment on the evidence and should not be given in Washington. *See, e.g., State v. Hall,* 40 Wn. App. 162, 167, 697 P.2d 597, *review denied,* 104 Wn.2d 1001 (1985); *State v. Delker,* 35 Wn. App. 346, 348, 666 P.2d 896, *review denied,* 100 Wn.2d 1016 (1983). The trial court correctly refused to give what was essentially a *Telfaire* instruction.

---

[6]*United States v. Telfaire,* 469 F.2d 552 (D.C. Cir. 1972).

## VI

Watkins next contends that the trial court erred in admitting in–court identifications by Schwind and Teter.

■ Convictions based on in–court identifications following pretrial identification will be set aside only if the pretrial identification procedures were "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968); *State v. McDonald,* 40 Wn. App. 743, 746, 700 P.2d 327 (1985).

Watkins contends that the pretrial identification procedures were impermissibly suggestive because Schwind and Teter were shown photographs and Teter a composite drawing prior to the lineup. She argues that the photographs and composite drawing are analytically similar to the presentation of photographic displays in which one person's picture recurs.

The United States Supreme Court has recognized that showing a witness group pictures in which the photograph of a single individual recurs increases the danger of misidentification at trial because the witness may remember the image of the photograph rather than the person actually seen. *Simmons,* 390 U.S. at 383. However, Watkins cites no facts in support of her contention that the photographs and composite drawing were suggestive, and no law for her novel suggestion that these are analytically similar to the *Simmons* situation. Thus, she fails to meet her burden of showing that the photographs and composite drawing were suggestive, much less impermissibly so.

## VII

Watkins lastly contends that her other current offenses should have been treated as a single offense for purposes of calculating her offender score. Watkins relies on *State v. Taylor,* 47 Wn. App. 118, 734 P.2d 505 (1987), which was overruled in *State v. Jones,* 110 Wn.2d 74, 750 P.2d 620 (1988). Under *Jones,* the trial court correctly assigned

Watkins an offender score of 8, 2 points for each current offense.

Affirmed.

GROSSE, J., concurs.

WILLIAMS, J. Pro Tem., concurs in the result.