# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | DIVISION ONE |
| | ) | |
| Respondent, | ) | No. 70860-1-I |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| DAVID JAMES HANSEN III, | ) | |
| | ) | |
| Appellant. | ) | FILED: March 2, 2015 |
| | ) | |

DWYER, J. — A jury convicted David Hansen of two counts of robbery in the first degree. The charges arose from separate incidents involving different victims. Hansen appeals, challenging the trial court's denial of his motion to sever the counts. Balancing the potential prejudice of joinder against the concerns of judicial economy, we conclude that the trial court properly exercised its discretion in denying the motion to sever. We affirm.

I

On the evening of November 13, 2012 Troy Bodnar posted an advertisement on Craigslist, soliciting a partner for an evening of sex and drug use. David Hansen responded to the advertisement and the two men exchanged e-mail messages. Bodnar invited Hansen to his home in Seattle.

Hansen called Bodnar on his cell phone shortly before he arrived at around 10:00 p.m. The two men used methamphetamine, "got high and had sex." Over the course of the night, Bodnar became "uneasy," partly based on

certain information Hansen shared and questions he asked. For instance, early on, Hansen asked Bodnar if he had a gun, and later, Hansen offered to engage in certain sexual activity for payment. Eventually, Bodnar asked Hansen to leave. Hansen did not appear to be angry or offended.

However, after Bodnar dressed and emerged from the bathroom, he was struck on the head and knocked to the ground. Afterward, Bodnar noticed a candleholder in Hansen's hand. Hansen ordered Bodnar to stay on the ground, stating that he had a gun, although Bodnar did not see a gun. Bodnar saw Hansen running downstairs with Bodnar's iPad and Bodnar gave chase. Bodnar then saw Hansen attempting to maneuver a bicycle out of the entryway. After Hansen saw Bodnar press an alarm button on his keychain and nearby police sirens became audible, Hansen left without the bicycle.

Bodnar realized that his head was bleeding profusely and that he needed medical attention. He called 911. An ambulance arrived and medical personnel took Bodnar to a nearby hospital for medical treatment. A few hours later, two police officers accompanied Bodnar home from the hospital. They took photographs and dusted for finger prints. Apprehensive about exposing his drug activity, Bodnar did not allow the officers to search his bedroom. Bodnar had deleted Hansen's e-mail messages and the photograph Hansen had sent him and did not offer Hansen's telephone number to the police.

Several weeks later, Bodnar identified Hansen in a photomontage. Hansen's fingerprints matched two latent fingerprints taken from the candleholder Bodnar believed Hansen had used to strike him.

2

Almost two months after this incident, on the evening of January 4, 2013, Al Payne arranged for an acquaintance, Josh Jasperson, to come to his Seattle apartment. Payne's implicit expectation for the evening was that he and Jasperson would use methamphetamine and have a sexual encounter. Jasperson arrived and they used methamphetamine. Then, after exchanging several text messages, Jasperson asked to invite Hansen to Payne's apartment. Payne agreed, although he had never met Hansen.

Hansen arrived, used methamphetamine, and had sexual contact with Jasperson. Sometime in the early morning, after the sexual contact, Hansen said he had to leave. He did so.

Several hours later, in the early afternoon, Hansen unexpectedly returned to Payne's apartment. Jasperson was still there. Hansen initially behaved in a friendly manner, but about 10 minutes after he arrived, he removed a gun from his waistband and said, "This is a robbery. Don't move or I'll kill you." Hansen hit Payne on the leg with the gun. Payne believed the gun was real and later described it as a semiautomatic, possibly a Glock.

Hansen took Payne's and Jasperson's cell phones. Then, he picked up a reusable shopping bag and said, "[W]hat do I want here?" Hansen took a laptop, several watches, and Payne's wallet. Before leaving, Hansen said, "[D]on't call the police, because I know where you live."

Payne and Jasperson remained on the sofa, in a state of "shock," for some time after Hansen left. Jasperson then left the house. He soon returned, accompanied by a mutual acquaintance who lent Payne a cell phone so that he

could call his cell phone service provider and credit card company and report the theft. Jasperson left soon thereafter. Payne took sleep medication and went to bed.

Payne did not report the incident to the police until approximately two weeks later, after he read a news report about another person being robbed at gunpoint. Payne gave Hansen's name and description to the police, but initially refused to provide any contact information for Jasperson or information about the person who lent him the cell phone after the robbery and who was mutually acquainted with both Jasperson and Hansen.[1] A few days after he made his report, Payne identified Hansen in a photomontage as the person who had robbed him.

Police eventually arrested Hansen. The State charged him with two counts of robbery in the first degree. The police searched Hansen's residence, but found neither property belonging to Bodnar or Payne nor any weapons.

Prior to trial, Hansen moved to sever the two charges. The court denied the motion. Bodnar and Payne were the primary witnesses at trial. Police officers were unable to locate Jasperson. Hansen did not testify. The jury found Hansen guilty as charged.

## II

Hansen contends that the trial court abused its discretion in denying his motion to sever the robbery counts. We disagree.

---

[1] Payne eventually provided Jasperson's e-mail to the police. He also testified that after Hansen was arrested, he tried to contact Jasperson and convince him to cooperate with the prosecution, to no avail.

4

Under CrR 4.3's "liberal" joinder rule, the trial court has considerable discretion to join two or more offenses of "the same or similar character, even if [they are] not part of a single scheme or plan." CrR 4.3(a)(1); State v. Eastabrook, 58 Wn. App. 805, 811, 795 P.2d 151 (1990). Nevertheless, offenses properly joined under CrR 4.3(a) may be severed "if 'the [trial] court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense.'" State v. Bythrow, 114 Wn.2d 713, 717, 790 P.2d 154 (1990) (quoting CrR 4.4(b)). Prejudice may result from joinder where the defendant is embarrassed or confounded by the presentation of separate defenses, or if a single trial invites the jury to cumulate the evidence to find guilt or infer criminal disposition. State v. Russell, 125 Wn.2d 24, 62-63, 882 P.2d 747 (1994). A defendant seeking severance has the burden of demonstrating that "a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." Bythrow, 114 Wn.2d at 718.

In determining whether the potential for prejudice requires severance, a trial court must consider four factors that may "offset or neutralize the prejudicial effect of joinder": (1) the strength of the State's evidence on each count, (2) the clarity of defenses as to each count, (3) the court's instructions to the jury to consider each count separately, and (4) the potential cross-admissibility of evidence on the other charges even if they were tried separately. Russell, 125 Wn.2d at 63; State v. Sanders, 66 Wn. App. 878, 885, 833 P.2d 452 (1992). "[A]ny residual prejudice must be weighed against the need for judicial economy." Russell, 125 Wn.2d at 63. We review a trial court's denial of a CrR 4.4(b) motion

5

to sever counts for a manifest abuse of discretion. Bythrow, 114 Wn.2d at 717; State v. Bryant, 89 Wn. App. 857, 864, 950 P.2d 1004 (1998).

Concerning the first factor, Hansen argues that the evidence supporting the charge involving Bodnar was significantly stronger and bolstered the weaker charge involving Payne. Severance may be proper when the evidence on one count is "remarkably stronger" than the other. State v. MacDonald, 122 Wn. App. 804, 815, 95 P.3d 1248 (2004). Hansen claims that Bodnar's allegations were corroborated by the testimony of a latent print examiner and police officers who responded to Bodnar's 911 call, whereas no witnesses corroborated Payne's allegations. But the only witness who shed light on the contested issue— whether the encounter with Hansen ended in a robbery as alleged—was Bodnar. The fingerprint match merely confirmed that Hansen had been at Bodnar's home, a fact Hansen did not dispute. The testimony did not conclusively establish that Hansen used the candleholder as a weapon against Bodnar in order to rob him.

Evidence is sufficiently strong if it would allow a rational jury to find the defendant guilty of each charge independently. Bryant, 89 Wn. App. at 867. With respect to both counts, the victims' testimony established that the robberies occurred and this evidence was sufficiently strong on both counts. There was no significant disparity in the strength of the State's evidence that led to manifest prejudice resulting from the joint trial.

As to the clarity of defenses, Hansen contends that his desire to testify about one charge and not the other charge required severance. In the trial court, Hansen indicated his intent to raise self-defense as a defense to the count

involving Bodnar as opposed to his defense of general denial as to the count involving Payne. While reserving the right to decide at trial whether to testify, Hansen said he might testify as to one count and not the other. At the hearing on the severance motion, defense counsel explained that a defendant asserting self-defense would "typically" take the stand in order to explain how the injury occurred. Hansen then argued that it would be "way too prejudicial" for him to testify as to only one charge because the jury could speculate that he was "hiding something" with respect to the other charge or that he had no defense. Later during the same hearing, the court ruled that if Hansen did testify, the State would be permitted to impeach him with evidence of several prior convictions.

An expressed desire to testify as to one count but not others does not, without more, require severance. Russell, 125 Wn.2d at 65; State v. Watkins, 53 Wn. App. 264, 269-70, 766 P.2d 484 (1989). Severance is required only if a defendant makes a "'convincing showing that she has important testimony to give concerning one count and a strong need to refrain from testifying about another.'" Russell, 125 Wn.2d at 65 (quoting Watkins, 53 Wn. App. at 270).

In Russell, the defendant made no offer of proof as to the content of his anticipated testimony as to one count and, consequently, the court could not conclude that joinder of three murder counts involving separate dates and victims affected his decision not to testify. 125 Wn.2d at 65. Likewise, here, beyond stating that which a claim of self-defense "typically" involves, Hansen made no offer of proof with regard to his testimony. And while Hansen declared that he had no "obligation to testify" on the second count, he failed to identify a strong

7

need to refrain from testifying with respect to the count involving Payne. As in Russell, this record does not provide an adequate basis for us to evaluate whether or how joinder affected Hansen's decision not to testify. See Russell, 125 Wn.2d 65-66.

The third factor is not significant here because the court's instructions directed the jury to "decide each count separately" and not to let its "verdict on one count . . . control [the] verdict on the other count." Appellate courts have repeatedly found this instruction sufficient to mitigate prejudice resulting from joinder. See, e.g., Bythrow, 114 Wn.2d at 723; State v. Cotten, 75 Wn. App. 669, 688, 879 P.2d 971 (1994).

Finally, as to the cross admissibility of the evidence in separate trials, the trial court observed that the evidence was likely cross-admissible because the incident involving Bodnar was relevant to Payne's "significant delay in reporting, explained by reading about the defendant's other case that happened a couple of months later." Hansen argues that the trial court failed to properly analyze this factor under ER 404(b). He also correctly points out that the Bodnar incident took place two months before, not after, the incident at Payne's apartment and accordingly argues that the record does not support the court's reason for concluding that the Bodnar incident was relevant to the timing of Payne's report.

Even assuming the court erred in its determination of cross-admissibility, "[t]he fact that separate counts would not be cross admissible in separate proceedings does not necessarily represent a sufficient ground to sever as a matter of law." State v. Kalakosky, 121 Wn.2d 525, 538, 852 P.2d 1064 (1993).

8

For instance, in Bythrow, the Supreme Court determined that despite some general similarities, evidence about a donut shop robbery would not have been admissible in the separate trial of a gas station robbery. 114 Wn.2d at 720. Nevertheless, the court held that, "'[w]hen evidence concerning the other crime is limited or not admissible, our primary concern is whether the jury can reasonably be expected to "compartmentalize the evidence" so that evidence of one crime does not taint the jury's consideration of another crime.'" Bythrow, 114 Wn.2d at 721 (quoting United States v. Johnson, 820 F.2d 1065, 1071 (9th Cir.1987)). Where the issues are relatively simple and the trial was short, the jury may be reasonably expected to compartmentalize the evidence, and "there may be no prejudicial effect from joinder even when the evidence would not have been admissible in separate trials." Bythrow, 114 Wn.2d at 721. The issues in Hansen's case were relatively simple and his trial took place over two days. The jury could reasonably be expected to compartmentalize the evidence.

While potential for prejudice invariably exists when similar counts are joined, the potential prejudice in this case was mitigated by several factors, including the sufficiently strong evidence on each count, the relatively equal strength of the evidence supporting each count, the clarity of defenses, and the jury instructions. Moreover, the defendant must be able to point to "specific prejudice" from the trial court's failure to sever counts; and any "residual prejudice" must still be "weighed against the need for judicial economy." Russell, 125 Wn.2d at 63; Bythrow, 114 Wn.2d at 720. Hansen fails to demonstrate any

specific prejudice resulting from the trial court's denial of his motion to sever the robbery counts. The trial court did not abuse its discretion.

Affirmed.

Dwyer, J.

We concur:

Spearman, CJ.

Cox, J.