FILED
11/25/2024
Court of Appeals
Division I
State of Washington

**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| STATE OF WASHINGTON, | No. 86860-8-I |
| Respondent, | |
| v. | DIVISION ONE |
| TERRY MATTHEW JAMES KOHL, | UNPUBLISHED OPINION |
| Appellant. | |

FELDMAN, J. — Terry Matthew James Kohl killed a pedestrian and injured another, both 12-year old girls, when the truck he was driving veered off the road and struck them. In the ensuing investigation, police discovered in his garage a firearm that he could not lawfully possess and a stolen vehicle parked in front of his home. On appeal, Kohl argues that insufficient evidence supports his convictions for vehicular homicide, vehicular assault, unlawful possession of a firearm in the first degree, and unlawful possession of a stolen vehicle and that the trial court abused its discretion in denying his motions to waive counsel and sever offenses. We affirm.

## I

In the early morning of January 15, 2022, Kohl broke into a landscaping business, Amazing Landscape Services (Amazing Landscape), and stole several items of property, including a truck (the landscaping truck). Around 10:30 a.m., Kohl was driving the landscaping truck on a residential street when he veered off the road and struck two pedestrians, both children, killing one and injuring the other. Police later identified Kohl as a suspect and arrested him at his home. During the arrest and search of Kohl's home, police discovered a handgun in his garage and a stolen Nissan pickup truck (the Nissan truck) parked on the street in front of Kohl's home.

The State charged Kohl with (1) vehicular homicide, (2) vehicular assault, (3) failure to remain at an accident resulting in death, (4) burglary in the second degree, (5) unlawful possession of a stolen vehicle (relating to the landscaping truck), (6) unlawful possession of a firearm in the first degree, (7) possession of a stolen firearm, (8) unlawful possession of a stolen vehicle (relating to the Nissan truck), and (9) possession of stolen property in the first degree. The State dismissed count 7 before trial. The jury convicted Kohl of the remaining eight counts. Kohl appeals.

## II

### A. Sufficiency of the evidence

Kohl argues the State presented insufficient evidence to support his convictions for vehicular homicide, vehicular assault, unlawful possession of a firearm in the first degree, and unlawful possession of a stolen vehicle (the Nissan

truck). To determine whether sufficient evidence supports a jury's verdict, we must assess "whether any rational fact finder could have found the elements of the crime beyond a reasonable doubt." *State v. Homan*, 181 Wn.2d 102, 105, 330 P.3d 182 (2014). In reviewing the evidence, "all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). Additionally, "Circumstantial and direct evidence are equally reliable, and we defer to the trier of fact on conflicting testimony, witness credibility, and the persuasiveness of the evidence." *State v. Raleigh*, 157 Wn. App. 728, 736-37, 238 P.3d 1211 (2010). With this legal framework, we turn to Kohl's challenged convictions and conclude sufficient evidence supports each of them.

### 1. Vehicular homicide and vehicular assault

While Kohl concedes that he drove the landscaping truck "with disregard for the safety of others," he argues insufficient evidence supports his convictions for vehicular homicide and vehicular assault while operating a vehicle "in a reckless manner." The distinction between driving "with disregard for the safety of others," which Kohl concedes, and driving "in a reckless manner," which Kohl contests, is significant because driving "in a reckless manner" carries a higher seriousness for sentencing purposes. *See* RCW 9.94A.510, .515. On this issue, the jury was instructed, "To operate a motor vehicle in a reckless manner means to drive in a rash or heedless manner, indifferent to the consequences."

Before the collision, the vehicle Kohl was driving crossed the center line into the oncoming lane of traffic four times. After Kohl crossed the center line the fourth

time, he overcorrected the vehicle and drove off the right side of the road, through a drainage ditch and signpost, and into the two pedestrians. At the time of the collision, Kohl was driving 39 mph (the speed limit was 35 mph), and he did not brake before impact. About a half-hour before the collision, a witness encountered Kohl asleep behind the wheel of the landscaping truck while parked in the middle of a road—suggesting that he was sleep deprived when he drove the vehicle. Because this evidence, viewed favorably to the prosecution, is sufficient to persuade a rational fact finder that Kohl drove the vehicle in a rash or heedless manner, indifferent to the consequences, sufficient evidence supports Kohl's convictions for vehicular homicide and vehicular assault while operating a vehicle "in a reckless manner."

### 2. Unlawful possession of a firearm in the first degree

Kohl asserts there is insufficient evidence that he possessed the firearm found in his garage. The jury was given the following instruction regarding the possession element for this offense:

> For purposes of Count 6, possession means having a firearm in one's custody or control. It may be either actual or constructive. Actual possession occurs when the item is in the actual physical custody of the person charged with possession. Constructive possession occurs when there is no actual physical possession but there is dominion and control over the item.
>
> Proximity alone without proof of dominion and control is insufficient to establish constructive possession. Dominion and control need not be exclusive to support a finding of constructive possession.
>
> In deciding whether the defendant had dominion and control over an item, you are to consider all the relevant circumstances in the case. Factors that you may consider, among others, include whether the defendant had the immediate ability to take actual possession of the item, whether the defendant had the capacity to exclude others from

possession of the item, and whether the defendant had dominion and control over the premises where the item was located. No single one of these factors necessarily controls your decision.

The possession issue thus turns on whether Kohl had actual *or* constructive possession of the firearm, where constructive possession considers all of the relevant circumstances showing dominion and control.

Sufficient evidence establishes constructive possession. When police arrested Kohl inside the garage attached to his residence, multiple officers observed the firearm—a semi-automatic handgun—located on a workbench six to ten feet away from Kohl. Additionally, Kohl's DNA was recovered from the handle of the firearm. While Kohl points to other evidence negating possession, such as the presence of three other persons' DNA on the firearm and the fact that the workbench was cluttered with other items, Kohl's argument ignores the controlling standard of review, which requires us to defer to the jury on the persuasiveness of the evidence and to draw all reasonable inferences from the evidence in the State's favor and most strongly against him. *See Raleigh*, 157 Wn. App. at 736-37. Because the above evidence is sufficient to persuade a rational fact finder that Kohl constructively possessed the firearm found in his garage, there is sufficient evidence supporting his conviction for unlawful possession of a firearm in the first degree.

### 3. Unlawful possession of a stolen vehicle

Kohl claims there is insufficient evidence that he possessed the stolen Nissan truck. Similar to our analysis of whether Kohl constructively possessed the firearm, whether Kohl constructively possessed the stolen Nissan truck turns on

whether he had dominion and control over it. *See State v. Lakotiy*, 151 Wn. App. 699, 713-14, 214 P.3d 181 (2009). Here, the State presented evidence that the Nissan truck was stolen from one of Kohl's neighbors, James Cho, in January 2022. A few days later, Cho observed the Nissan truck parked at a house at the end of the street on which he and Kohl resided. Kohl also admitted to police that "Breanna" picked him up in the Nissan truck after the burglary at Amazing Landscape on January 15.[1] And when police arrested Kohl at his residence on January 26, they found the Nissan truck parked on the street in front of Kohl's residence.

Kohl contends the State only established his "proximity" to the Nissan truck, which he claims is insufficient evidence that he possessed it. This argument views the evidence too narrowly. A police officer observed that the Nissan truck was parked "[d]irectly" in front of Kohl's residence such that "it was basically blocking in front of the house, in front of the driveway." Another police officer testified that someone had damaged the Nissan truck's ignition cylinder "[s]o they could bypass it" and "start it without a key." This evidence, viewed favorably to the State, is sufficient to persuade a rational fact finder that Kohl maintained dominion and control over the stolen Nissan truck and, thus, constructively possessed it. Accordingly, sufficient evidence supports Kohl's conviction for unlawful possession of a stolen vehicle.

---

[1] At trial, Kohl identified "Breanna" solely by her first name. While not critical to our holding here, the sentencing record reveals that "Breanna" is Briana Tennison, Kohl's fiancé and mother of his child.

## B.      Denial of motion to waive counsel

Kohl argues the trial court abused its discretion by denying his motion to waive counsel and represent himself in the proceedings below.  We disagree.

Our review of a trial court's ruling denying a defendant's request to waive counsel is deferential.    While criminal defendants have a right to self-representation under both the United States and Washington Constitutions, this right exists in tension with the defendant's constitutional right to the assistance of counsel.    *State v. Burns*, 193 Wn.2d 190, 201-02, 438 P.3d 1183 (2019).  Consequently, courts indulge in every reasonable presumption against a defendant's waiver of their right to counsel.  *Id.* at 202.  Additionally, we review a trial court's denial of a defendant's request to waive counsel for an abuse of discretion because trial judges "have more experience with evaluating requests to proceed pro se and have the benefit of observing the behavior, intonation, and characteristics of the defendant during a request."  *Id.*

In evaluating a defendant's request to proceed pro se, the trial court must first determine whether the request is "unequivocal and timely."  *Id.* at 203.  If so, the court must then determine whether the request is "knowing, voluntary, and intelligent."  *Id.*  This determination should be made through a colloquy on the record that includes "a discussion of the nature of the charges against the defendant, the maximum penalty, and the fact that the defendant will be subject to the technical and procedural rules of the court in the presentation of his case."  *Id.*  Ultimately, the trial court "must evaluate all of the information in front of it and use its discretion to determine whether the waiver is knowing, voluntary, and intelligent,

and to ensure a waiver is made with an understanding of the consequences and the seriousness of the charges." *Id.* at 203-04. On appeal, we will not disturb a trial court's denial of a defendant's request to proceed pro se "[s]o long as a trial court conducted an adequate inquiry into a defendant's request and there is a factual basis for the court's finding that the waiver of counsel was not knowing, intelligent, and voluntary." *Id.* at 204.

For purposes of this appeal, we assume Kohl's request to waive counsel was unequivocal and timely. Nevertheless, the record provides a tenable basis for the trial court's determination that Kohl's request was not knowing, intelligent, and voluntary and was not made with an understanding of the consequences and the seriousness of the charges. Kohl's charges were serious; he was charged with one class A felony and seven class B felonies. In discussing the maximum sentence Kohl could receive if convicted as charged, which the prosecutor estimated to be "right around 80 or 90 years of potential prison time," Kohl remarked that his appointed counsel "told me there is no defense to my case, so at that point ain't I facing the same thing?" Kohl appears to have believed he would receive the maximum possible sentence regardless of whether he proceeded pro se or with counsel, and he did not appear to understand that having "no defense" to a crime at trial does not automatically result in being convicted on every charge and receiving the maximum possible sentence. Moreover, Kohl was not familiar with the rules of evidence or criminal procedure, and he apparently believed the Freedom of Information Act governed his criminal proceedings. Lastly, the extensive trial court colloquy also revealed that the defense had not yet interviewed

any of the State's witnesses. On this record, the trial court did not abuse its discretion in denying Kohl's motion.

## C.      Denial of motions to sever offenses

Kohl argues the trial court abused its discretion in denying his motions to sever counts 6 (unlawful possession of the firearm) and 8 (unlawful possession of the stolen Nissan truck) from the remaining counts. We disagree.

A trial court may sever offenses if it determines that severance "will promote a fair determination of the defendant's guilt or innocence of each offense." *State v. Bythrow*, 114 Wn.2d 713, 717, 790 P.2d 154 (1990) (quoting CrR 4.4(b)). But while a trial court may sever offenses in appropriate cases, "Separate trials have never been favored in this state." *State v. Grisby*, 97 Wn.2d 493, 506, 647 P.2d 6 (1982) (quoting *State v. Herd*, 14 Wn. App. 959, 963 n.2, 546 P.2d 1222 (1976)). Thus, a defendant seeking to sever offenses bears the burden of "demonstrating that a trial involving both counts would be so manifestly prejudicial as to outweigh the concern for judicial economy." *Bythrow*, 114 Wn.2d at 718.

To determine whether the potential for prejudice requires severance, a trial court must consider four factors: "(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial." *State v. Russell*, 125 Wn.2d, 63, 882 P.2d 747 (1994). Additionally, "any residual prejudice must be weighed against the need for judicial economy." *Id.* We review a trial court's denial of a defendant's motion to sever offenses for a manifest abuse of discretion. *Bythrow*, 114 Wn.2d at 717.

Even if the trial court abuses its discretion in denying a defendant's motion to sever offenses, we will not grant a new trial if the error is harmless. *State v. Watkins*, 53 Wn. App. 264, 273, 766 P.2d 484 (1989).

Kohl has not disputed on appeal or at trial that the second prejudice factor—the clarity of his defenses—and third prejudice factor—the trial court's instructions to the jury that "[y]ou must decide each count separately" and "[y]our verdict on one count should not control your verdict on any other count"—both weigh against severance. Thus, at the very least, the trial court's ruling is supported by two of the four factors for determining whether the potential for prejudice outweighs judicial economy and requires severance. While Kohl argues the first and third prejudice factors weigh in favor of severance, his arguments do not establish a manifest abuse of discretion here.

As to the first prejudice factor—the strength of the State's evidence on each count—evidence is sufficiently strong if a rational juror could convict the defendant of each offense independently. *State v. Bryant*, 89 Wn. App. 857, 867, 950 P.2d 1004 (1998). Here, Kohl correctly observes that the evidence for counts 1-5 and 9 was strong, given that Kohl confessed to burglarizing Amazing Landscape and driving the vehicle that struck the two victims and the State discovered stolen property from Amazing Landscape in Kohl's storage unit and residence. As Parts II.A.2-3 above show, the evidence on counts 6 and 8 is also sufficiently strong to separately convict Kohl of each offense. Thus, contrary to Kohl's argument, the first prejudice factor weighs against severance.

Turning to the fourth prejudice factor, Kohl argues the evidence of the events on January 15, 2022 (when Kohl burglarized Amazing Landscape and struck two pedestrians with the stolen landscaping truck) and the evidence of the events of January 26, 2022 (when police arrested Kohl at his residence and discovered the stolen Nissan truck and firearm) would not have been cross-admissible in separate trials. We disagree with Kohl's argument as it relates to the stolen Nissan truck because the evidence of that offense and the evidence of the January 15 offenses would have been cross-admissible "res gestae" evidence, as it "completed the story of the crime on trial by proving its immediate context of happenings near in time and place" and "depicted a complete picture for the jury." *State v. Grier*, 168 Wn. App. 635, 647, 278 P.3d 225 (2012) (quoting *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995); *State v. Acosta*, 123 Wn. App. 424, 442, 98 P.3d 503 (2004)) (cleaned up). Kohl admitted to police that "Breanna" (identified in footnote 1 above) picked him up in the Nissan truck after the burglary on January 15. And when police arrested Kohl and searched his residence on January 26 in connection with their burglary and vehicular homicide investigation, they discovered the stolen Nissan truck parked in front of Kohl's driveway.

As to the firearm, we agree with Kohl that evidence showing he possessed a firearm and evidence pertaining to the January 15 offenses would not have been cross-admissible res gestae evidence because these offenses are entirely unrelated. *See State v. Trickler*, 106 Wn. App. 727, 732-34, 25 P.3d 445 (2001) (evidence of other stolen property found in defendant's possession was not admissible as res gestae evidence at trial on charge of possessing a stolen credit

card).   However, this lack of cross-admissibility does not require severance because no one prejudice factor is dispositive in the severance analysis.  *State v. Warren*, 55 Wn. App. 645, 655, 779 P.2d 1159 (1989).  Consistent with this multi-factor framework, our Supreme Court has emphasized, "The fact that separate counts would not be cross admissible in separate proceedings does not necessarily represent a sufficient ground to sever as a matter of law."  *State v. Kalakosky*, 121 Wn.2d 525, 538, 852 P.2d 1064 (1993) (citing *Bythrow*, 114 Wn.2d at 720; *State v. Markle*, 118 Wn.2d 424, 439, 823 P.2d 1101 (1992)).  Instead, "our primary concern is whether the jury can reasonably be expected to 'compartmentalize the evidence' so that evidence of one crime does not taint the jury's consideration of another crime.'"  *Bythrow*, 114 Wn.2d at 721 (quoting *United States v. Johnson*, 820 F.2d 1065, 1071 (9th Cir. 1987)).

Here, the jury could reasonably be expected to compartmentalize the evidence because the State presented a clear timeline of events separating the January 15 crimes from Kohl's possession of a firearm on January 26.  The dispositive issue relating to the latter offense was straightforward:  whether Kohl possessed the firearm when police arrived at his residence.  Moreover, none of the evidence relating to the January 15 offenses suggested that Kohl committed them using a firearm.  Thus, Kohl has not shown the necessary prejudice to warrant severance of the offenses.  *See Kalakosky*, 121 Wn.2d at 538-39 (trial court did not abuse its discretion in denying motion to sever five rape offenses because, even though evidence was not cross-admissible, the State's evidence was strong and the jury was instructed to consider each count separately); *see*

*also Watkins*, 53 Wn. App. at 273 (erroneous ruling that evidence was cross-admissible was harmless because the outcome of a trial on the severable offenses would not have been different given the strength of the State's evidence).

Lastly, even if Kohl could show there was at least *some* prejudice resulting from the trial court's denial of his severance motion, "any residual prejudice must be weighed against the need for judicial economy." *Russell*, 125 Wn.2d at 63. If the trial court had granted Kohl's severance motion, numerous witnesses would have been required to testify in two (or three) separate trials. For example, the same police officers who arrested Kohl and searched his residence in connection with the burglary and vehicular homicide investigation would have also been required to testify in a separate trial on the counts relating to the firearm and stolen Nissan truck that they observed and seized as part of that investigation. Balancing the minimal risk of residual prejudice against the need for judicial economy, we are unable to conclude that the trial court manifestly abused its discretion in denying Kohl's motions to sever counts 6 and 8 from the remaining counts.

Affirmed.

Feldman, J.

WE CONCUR:

Chung, J.

Smith, C.J.

- 13 -