2014 DEC 22 AM 9: 17



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
## DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 70291-2-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ROBERT D. HITT, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | FILED: December 22, 2014 |
| | ) | |

VERELLEN, A.C.J. — Robert Hitt was convicted by a jury of one count of first degree burglary with sexual motivation (count I), five counts of first degree kidnapping, one count of first degree kidnapping with sexual motivation (count III), and two counts of first degree robbery. Hitt challenges the admission of a prior rape conviction under ER 404(b) as evidence of a common scheme or plan. Hitt contends that the prejudice stemming from the admission of his prior rape conviction impacted not only the sexual motivation special verdicts but also his remaining convictions and deadly weapon sentence enhancements. We accept the State's concession that there were insufficient similarities to establish a common scheme or plan under ER 404(b). The sexual motivation special verdicts must therefore be reversed. But we affirm his remaining convictions and the deadly weapon sentence enhancements because there is overwhelming evidence of guilt.

Hitt challenges the reasonable doubt instruction containing "abiding belief" language, contending that the instruction diluted the State's burden of proof. But our Supreme Court has expressly affirmed the use of such abiding belief language.

Hitt also challenges the sufficiency of the evidence supporting the "shield or hostage" alternative means of first degree kidnapping. Viewing the evidence and all reasonable inferences in the light most favorable to the State, there is sufficient evidence for a rational trier of fact to conclude that Hitt intended to use the victims as hostages. Hitt's other arguments do not support any relief on appeal.

Accordingly, we reverse the sexual motivation special verdicts, affirm the first degree burglary conviction, first degree kidnapping convictions, first degree robbery convictions, deadly weapon sentence enhancements, and remand for resentencing.

## FACTS

Hitt broke a window and entered a house near the University of Washington campus. He encountered a young woman, E.H., and bound her wrists with tape. E.H. told Hitt that seven other women lived in the house. Hitt placed a knife to E.H.'s throat and took her room to room, coercing the other women to exit their rooms by threatening to kill E.H. Hitt took two of the women's cell phones. Hitt gathered six women in a room and ordered them to lie face down on the floor, binding their wrists with tape.[1] Hitt failed to locate two other women in the house. They called the police.

Hitt struggled to bind K.B.'s wrists because she wore bulky "onesie fleece pajamas" that unzipped from the front.[2] Hitt told K.B. to "take it off."[3] K.B. wore nothing

---

[1] Hitt did not bind one of the women's wrists because the police interrupted him.

[2] Report of Proceedings (RP) (Mar. 4, 2013) at 562.

[3] Id. at 563.

2

under the pajamas. Hitt forced K.B. to unzip her pajamas while he bound her wrists with tape, exposing at least the top half of her body.[4] Then the police arrived and found Hitt inside the house on the top floor landing. Hitt told the police that he was "just there to rob them."[5] Police freed the women, who had been bound with tape. They found two of the women's cell phones, a knife, and drugs on Hitt's person.

Hitt was charged with multiple counts of kidnapping and robbery and one count of burglary. Hitt objected to the admission of evidence of his 2002 first degree rape conviction that the State offered as proof of a common scheme or plan under ER 404(b). The trial court permitted the rape victim's testimony. Notably, the court's oral limiting instruction and written limiting instruction differ. The oral limiting instruction restricted the rape victim's testimony to only "determining whether the State . . . met its burden of proof with regard to motive in counts I and III."[6] The written limiting instruction allowed the jury to consider her testimony "only for the purpose of deciding whether the defendant's prior conduct is part of a common scheme or plan, or as evidence of the defendant's motive or intent with respect to *conduct charged by the [S]tate in this case.*"[7]

The jury found Hitt guilty of one count of first degree burglary, six counts of first degree kidnapping, and two counts of first degree robbery.[8] For each conviction, the

---

[4] There is conflicting testimony whether Hitt unzipped K.B.'s onesie all the way down, fully exposing K.B. Several victims testified that K.B. was fully exposed.

[5] RP (Feb. 28, 2013) at 428.

[6] RP (Mar. 11, 2013) at 1180.

[7] Clerk's Papers (CP) at 199 (emphasis added).

[8] Hitt's convictions for first degree kidnapping were both premised on the alternative means of intent to facilitate robbery or intent to hold the victims as a shield or hostage. RCW 9A.40.020(1)(a), (b).

jury entered a special verdict that Hitt was armed with a deadly weapon at the time of the commission of the crime.[9] The jury also entered special verdicts that Hitt committed both first degree burglary (count I) and first degree kidnapping (count III) with sexual motivation. Hitt was sentenced to life imprisonment as a persistent offender based on the sexual motivation special verdicts and the 2002 rape conviction.[10]

Hitt appeals.

## ANALYSIS

Hitt contends, and the State concedes, that his prior rape conviction and the current crimes have insufficient similarities to establish a common scheme or plan under ER 404(b). We accept the State's concession.

A finding of sexual motivation is an aggravating circumstance that can support an exceptional sentence.[11] "'Sexual motivation' means that one of the purposes for which the defendant committed the crime was for the purpose of his or her sexual gratification."[12] The State must prove beyond a reasonable doubt that the defendant committed the crime for sexual motivation, and "[i]t must do so with evidence of identifiable conduct by the defendant while committing the offense."[13]

---

[9] See RCW 9.94A.533(4), .825.

[10] See RCW 9.94A.030(37), .570. Without the sexual motivation special verdicts, Hitt would not have the two strikes required for a sentence of life without the possibility of early release.

[11] RCW 9.94A.535(3)(f).

[12] RCW 9.94A.030(47).

[13] State v. Vars, 157 Wn. App. 482, 494, 237 P.3d 378 (2010).

Here, as requested by the State, the trial court admitted evidence of Hitt's 2002

rape conviction under ER 404(b) as evidence of motive, intent, and a common scheme

or plan. ER 404(b) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the
> character of a person in order to show action in conformity therewith. It
> may, however, be admissible for other purposes, such as proof of motive,
> opportunity, intent, preparation, plan, knowledge, identity, or absence of
> mistake or accident.

"ER 404(b) is a categorical bar to admission of evidence for the purpose of proving a

person's character and showing that the person acted in conformity with that

character."[14] Evidence of prior misconduct is presumptively inadmissible, and courts

must resolve any doubt about admissibility in favor of exclusion.[15]

One proper purpose for admitting evidence of prior misconduct is to show the

existence of a common scheme or plan.[16] Relevant here, a common scheme or plan

includes occasions "where 'an individual devises a plan and uses it repeatedly to

---

[14] State v. Gresham, 173 Wn.2d 405, 420, 269 P.3d 207 (2012); State v. Holmes, 43 Wn. App. 397, 400, 717 P.2d 766 (1986) (rejecting the "once a thief, always a thief" rationale for admitting evidence).

[15] State v. DeVincentis, 150 Wn.2d 11, 17, 74 P.3d 119 (2003); State v. Wilson, 144 Wn. App. 166, 177, 181 P.3d 887 (2008) ("In close cases, the balance must be tipped in favor of the defendant."); accord State v. Thang, 145 Wn.2d 630, 642, 41 P.3d 1159 (2002). In addition, to admit evidence of prior misconduct under ER 404(b), "the court must (1) find by a preponderance of the evidence the misconduct actually occurred, (2) identify the purpose of admitting the evidence, (3) determine the relevance of the evidence to prove an element of the crime charged, and (4) weigh the probative value against the prejudicial effect of the evidence." State v. Fisher, 165 Wn.2d 727, 745, 202 P.3d 937 (2009). The court must also identify the purpose of the evidence and conduct the balancing on the record. State v. Jackson, 102 Wn.2d 689, 693-94, 689 P.2d 76 (1984).

[16] See DeVincentis, 150 Wn.2d at 17.

perpetrate separate but very similar crimes.'"[17] There must be substantial similarity between the prior misconduct and the charged crimes; "more than merely similar results" are required.[18]

The State urged the trial court to accept the similarities between the 2002 rape conviction and the instant offenses. The trial court identified facts common to both cases. But the instant offenses and the 2002 rape conviction are not "markedly similar acts" and do not show substantial similarity that manifests a common scheme or plan.[19] The State concedes that because neither of the events was well thought out and both appeared to be impulsive that a common scheme or plan is absent. Although both crimes occurred in residences, Hitt's 2002 rape conviction occurred in his own residence (an apartment), and the current incident occurred in the victims' residence (a house). The State now concedes that this is an insignificant similarity since most sex crimes occur in residences. And while in both incidents the victims were young, college-aged females, this also is of limited significance because no evidence suggests that Hitt knew that eight young, college-aged women occupied the residence.[20] In both events, the victims offered Hitt money in order to get away from him, but such a

---

[17] Gresham, 173 Wn.2d at 421-22 (quoting State v. Lough, 125 Wn.2d 847, 854-55, 889 P.2d 487 (1995)).

[18] DeVincentis, 150 Wn.2d at 20; Lough, 125 Wn.2d at 860 ("To establish common design or plan, for the purposes of ER 404(b), the evidence of prior conduct must demonstrate not merely similarity in results, but such occurrence of common features that the various acts are naturally to be explained as caused by a general plan of which the charged crime and the prior misconduct are the individual manifestations.").

[19] Lough, 125 Wn.2d at 852.

[20] See id. at 860 ("the similarity is not merely coincidental, but indicates that the conduct was directed by design"); DeVincentis, 150 Wn.2d at 20 ("Random similarities are not enough.").

response to Hitt's criminal behavior does not relate to his common scheme or plan.

Moreover, in both incidents, Hitt ordered a victim to disrobe themselves, which they did. But the State concedes that ordering a victim to disrobe is a limited similarity. In Hitt's 2002 rape, disrobing was an immediate prelude to rape. And, at least as far as the current incident unfolded, ordering K.B. to disrobe so Hitt could bind her wrists had limited similarity to the 2002 rape. In both cases, Hitt also expressed repeated concern about being caught by police. But in the 2002 rape, this occurred after he completed the rape, and in the current incident, Hitt was preoccupied with the victims calling the police from the outset. The State now concedes that the similarities do not amount to "markedly similar acts of misconduct [committed] under similar circumstances"[21] and "[s]ufficient repetition of complex common features."[22] We accept the State's concession that evidence of Hitt's 2002 rape conviction should not have been admitted. The sexual motivation special verdicts must therefore be reversed and this matter remanded for resentencing.

Hitt contends that we should also reverse his remaining convictions and remand for a new trial because the trial court allowed the jury to consider Hitt's 2002 rape conviction to show "motive or intent with respect to conduct charged by the [S]tate in this case."[23] Hitt contends that the prejudice stemming from the admission of his 2002 rape conviction cannot be confined to the sexual motivation special verdicts. We disagree.

---

[21] State v. Hecht, 179 Wn. App. 497, 508-09, 319 P.3d 836 (2014).

[22] State v. Burkins, 94 Wn. App. 677, 689, 973 P.2d 15 (1999).

[23] CP at 199.

"Erroneous admission of evidence in violation of ER 404(b) is analyzed under the nonconstitutional harmless error standard."[24] We must ask whether there is a reasonable probability that, without the error, "'the outcome of the trial would have been materially affected.'"[25] "The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole."[26]

"Evidence of prior felony convictions is generally inadmissible against a defendant because it is not relevant to the question of guilt yet very prejudicial, as it may lead the jury to believe the defendant has a [criminal] propensity."[27] We also acknowledge that the potential prejudice from admitting prior misconduct is "'at its highest'" in sex-offense cases.[28] But in assessing whether the error was harmless, we must measure the admissible evidence of Hitt's guilt against the prejudice caused by the inadmissible 2002 rape victim's testimony. Here, immediately prior to admission of the testimony, the trial court gave an oral limiting instruction to the jury:

---

[24] State v. Gower, 179 Wn.2d 851, 854, 321 P.3d 1178 (2014).

[25] Gresham, 173 Wn.2d at 433 (quoting State v. Smith, 106 Wn.2d 772, 780, 725 P.2d 951 (1986)).

[26] State v. Bourgeois, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997).

[27] State v. Hardy, 133 Wn.2d 701, 706, 946 P.2d 1175 (1997); see also 5 KARL B. TEGLAND, WASHINGTON PRACTICE: EVIDENCE LAW AND PRACTICE § 404.10, at 497-98 (5th ed. 2007) ("Rule 404(b) is based upon the belief that such evidence is too prejudicial— that despite its probative value, the evidence is likely to be overvalued by the jury, and the jury is too likely to jump to a conclusion of guilt without considering other evidence presented at trial.").

[28] Gower, 179 Wn.2d at 857 (quoting Gresham, 173 Wn.2d at 433); see also State v. Harris, 36 Wn. App. 746, 752, 677 P.2d 202 (1984) (recognizing the "great potential for prejudice inherent in evidence of prior sexual offenses'" (quoting State v. Saltarelli, 98 Wn.2d 358, 364, 655 P.2d 697 (1982)).

This testimony is admitted only for a limited purpose. The testimony may be considered by you only for the purposes of determining whether the State has met its burden of proof with regard to motive as relevant to Counts I and III as charged, and it may not be considered for any other purpose.[29]

Later, the trial court's written limiting instruction provided that

[c]ertain evidence has been admitted in this case for only a limited purpose. This evidence consists of the testimony of [the 2002 rape victim]. Her testimony may be considered by you only for the purpose of deciding whether the defendant's prior conduct is part of a common scheme or plan, or *as evidence of the defendant's motive or intent with respect to conduct charged by the [S]tate in this case.* You may not consider it for any other purpose.[30]

Although the written limiting instruction permitted the jury to consider the testimony as evidence of Hitt's motive or intent with respect to conduct charged by the State in general, "[t]he improper admission of [ER 404(b)] evidence constitutes harmless error" if there is overwhelming evidence of guilt beyond a reasonable doubt for Hitt's remaining convictions and deadly weapon sentence enhancements.[31]

Here, given the overwhelming evidence of guilt, it is not reasonably probable that admitting the 2002 rape victim's testimony materially affected the trial's outcome apart from the sexual motivation determinations. Hitt unlawfully entered the house by wrapping a rock around his sweater and breaking a side window. A police officer described fresh scuff marks on the broken window's molding, and Hitt also had a bloody cut on his forearm, which supported the inference that Hitt entered the house via the broken side window. Several witnesses also testified that blood was found in the house, including on the wooden stairwell and on a victim's door. Importantly, the police

---

[29] RP (Mar. 11, 2013) at 1180.

[30] CP at 199 (emphasis added).

[31] Bourgeois, 133 Wn.2d at 403.

9

found Hitt inside the house. Upon seeing the police, Hitt retreated from the top floor landing to the room where six victims were secreted.

Moreover, in a recorded interview with detectives, Hitt admitted that he "was just there to rob them."[32] Police found two of the women's cell phones and a knife on Hitt's person. Uncontroverted testimony shows that Hitt intentionally took two victims' cell phones against their will with the threat of deadly force. Several victims testified that Hitt was armed with a knife during the commission of the offenses.[33] Several victims also testified that Hitt restrained five victims' wrists with tape that restricted their movement, threatened to use deadly force if any of the victims called the police, and intended to hold the victims as hostages if police arrived. Consistent with the victims' testimony, police officers arrived at the house to find Hitt engaged in the kidnapping and the five victims' wrists bound with tape. And in a recorded interview with detectives, Hitt admitted that he "absolutely intentionally intended to burglarize [the] house."[34]

More importantly, the State in its closing argument did not use the prior rape conviction for any purpose other than to argue that it impacted the sexual motivation special allegations. When the prosecutor discussed the evidence crime by crime, she discussed intent in general terms for each charged crime. For example, as to kidnapping, the prosecutor argued that "[b]inding the women, holding them as hostages, that again shows what his intent was."[35] When the prosecutor referred to the prior rape

---

[32] Ex. 6 at 34.

[33] It is undisputed that the knife constituted a deadly weapon under RCW 9.94A.825.

[34] Ex. 6 at 50.

[35] RP (Mar. 12, 2014) at 1279.

conviction testimony, it was in the limited context of urging the jury to find Hitt guilty on the sexual motivation special allegations. Importantly, the State expressly acknowledged that the jury

> should not convict Mr. Hitt of the sexual motivation special verdict because he raped before. That would be improper. But, you should convict him of the sexual motivation special verdict because . . . this unique testimony of [the 2002 rape victim] gives you some insight into what motivates Mr. Hitt sexually. So, use that evidence appropriately. Look and see that it is a common scheme.[36]

Thus, the State's closing argument was consistent with the court's oral instruction limiting consideration of the prior rape evidence to the sexual motivation special allegations. The broad language of the written limiting instruction proposed by the State does not require us to overlook the overwhelming evidence of guilt for Hitt's remaining convictions and deadly weapon sentence enhancements. We therefore affirm Hitt's convictions for first degree robbery, first degree kidnapping, first degree burglary, and the deadly weapon sentence enhancements.

Hitt challenges the reasonable doubt instruction that "[i]f, from such consideration, you have an *abiding belief in the truth of the charge*, you are satisfied beyond a reasonable doubt."[37] Hitt contends that the abiding belief language

---

[36] Id. at 1294.

[37] CP at 195 (emphasis added). The trial court used 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 4.01, at 18 (3d ed. Supp. 2008), which included the abiding belief language. The court's reasonable doubt instruction stated in its entirety: "The defendant has entered a plea of not guilty. That plea puts in issue every element of the crime charged. The State is the plaintiff and has the burden of proving each element of each crime beyond a reasonable doubt. The defendant has no burden of proving that a reasonable doubt exists as to these elements. A defendant is presumed innocent. This presumption continues throughout the entire trial unless during your deliberations you find it has been overcome by the evidence beyond a reasonable doubt. A reasonable doubt is one for which a reason exists and may arise from the evidence or lack of evidence. It is such a doubt as would exist in the mind of a

encouraged the jury to undertake an impermissible search for the truth. But our Supreme Court has expressly affirmed the use of the abiding belief language in the reasonable doubt instruction.[38]

Hitt relies upon State v. Emery, where the prosecutor in closing told the jury both that their "verdict should speak the truth" and to "speak the truth by holding these men accountable for what they did."[39] Emery found these remarks improper, explaining that "[t]he jury's job is not to determine the truth of what happened; a jury therefore does not 'speak the truth' or 'declare the truth.' Rather, a jury's job is to determine whether the State has proved the charged offenses beyond a reasonable doubt."[40]

Unlike the search for truth argument at issue in Emery, the abiding belief language in the reasonable doubt instruction given here does not direct jurors to find the truth for themselves; it merely elaborates on the meaning of "satisfied beyond a reasonable doubt"[41] and accurately informs the jury that it must "determine whether the

---

reasonable person after fully, fairly, and carefully considering all of the evidence or lack of evidence. _If, from such consideration, you have an abiding belief in the truth of the charge, you are satisfied beyond a reasonable doubt._" CP at 195 (emphasis added). Hitt did not object to this instruction.

[38] State v. Bennett, 161 Wn.2d 303, 318, 165 P.3d 1241 (2007) (directing trial courts to use WPIC 4.01); see also State v. Pirtle, 127 Wn.2d 628, 656, 904 P.2d 245 (1995); State v. Fedorov, 181 Wn. App. 187, 200, 324 P.3d 784 (2014); State v. Kinzle, 181 Wn. App. 774, 784, 326 P.3d 870 (2014); State v. Lane, 56 Wn. App. 286, 299-301, 786 P.2d 277 (1989) (rejecting the argument that WPIC 4.01 and the use of the abiding belief language dilutes the State's burden of proof); accord State v. Mabry, 51 Wn. App. 24, 25, 751 P.2d 882 (1988); State v. Price, 33 Wn. App. 472, 474-75, 655 P.2d 1191 (1982).

[39] 174 Wn.2d 741, 751, 278 P.3d 653 (2012).

[40] Id. at 760 (citation omitted).

[41] Kinzle, 181 Wn. App. at 784.

State has proved the charged offenses beyond a reasonable doubt."[42] The reasonable doubt instruction accurately states the law. Therefore, Hitt fails to show that the burden of proof instruction was improper.

Hitt challenges the sufficiency of the evidence supporting his convictions for five counts of first degree kidnapping, contending that insufficient evidence supports the alternative means that he intentionally held five victims as a shield or hostage.[43] We disagree.

First degree kidnapping is an alternative means crime, where a single offense may be committed in more than one way.[44] "[T]here must be jury unanimity as to guilt for the single crime charged,"[45] but unanimity is not required for the means by which the crime was committed if sufficient evidence supports each alternative means.[46] We review the evidence in the light most favorable to the State.[47] Evidence is sufficient if

---

[42] Emery, 174 Wn.2d at 760. Multiple cases have upheld the use of this language, finding that it "adequately instructs the jury," Mabry, 51 Wn. App. at 25, and "could not have misled or confused the jury." Price, 33 Wn. App. at 476. And, importantly, Pirtle concluded that the language did not diminish the definition of the burden of proof. Pirtle, 127 Wn.2d at 658.

[43] Hitt concedes that sufficient evidence supports the jury's finding in count V that he intentionally abducted E.H. with the intent to use her as a shield or hostage. Hitt only challenges his first degree kidnapping convictions on counts II, III, IV, VI, and VII. Moreover, Hitt also concedes that sufficient evidence supports the alternative means that he intentionally abducted the victims with the intent to facilitate commission of robbery.

[44] State v. Garcia, 179 Wn.2d 828, 836, 318 P.3d 266 (2014); State v. Crane, 116 Wn.2d 315, 325, 804 P.2d 10 (1991); State v. Harrington, 181 Wn. App. 805, 818, 333 P.3d 410 (2014) ("An alternative means crime categorizes distinct acts that amount to the same crime.").

[45] Crane, 116 Wn.2d at 325.

[46] State v. Owens, 180 Wn.2d 90, 99, 323 P.3d 1030 (2014); State v. Sweany, 174 Wn.2d 909, 914, 281 P.3d 305 (2012).

[47] Owens, 180 Wn.2d at 99.

"'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[48]

In State v. Garcia, the court interpreted the meaning of the shield or hostage alternative means in the first degree kidnapping statute.[49] Garcia held that "proof of first degree kidnapping under the hostage/shield means requires proof that the defendant intended to use the victim as security for the performance of some action by another person or the prevention of some action by another person."[50] Garcia also held that first degree kidnapping requires an additional specific intent—an intent not only to intentionally abduct another person but also an "intent to use the victim as protection for the perpetrator."[51]

The trial court here instructed the jury on two alternative means, providing that "[a] person commits the crime of kidnapping in the first degree when he or she intentionally abducts another person with intent to hold the person as a shield or hostage or to facilitate the commission of robbery or flight thereafter.[52] We must determine whether there is sufficient evidence for any rational trier of fact to find that Hitt *intended to* use the victims as a shield or hostage."[53]

---

[48] Garcia, 179 Wn.2d at 836 (quoting State v. Engel, 166 Wn.2d 572, 576, 210 P.3d 1007 (2009)); Owens, 180 Wn.2d at 99.

[49] 179 Wn.2d 828, 318 P.3d 266 (2014).

[50] Id. at 840.

[51] Id.

[52] CP at 207; see RCW 9A.40.020(1)(a), (b).

[53] See In re Pers. Restraint of Fletcher, 113 Wn.2d 42, 52-53, 776 P.2d 114 (1989) (interpreting first degree kidnapping statute) ("[T]he person who intentionally abducts another need do so only with the *intent* to carry out one of the incidents enumerated in RCW 9A.40.020(1)(a) through (e) inclusive; not that the perpetrator actually bring about or complete one of those qualifying factors listed in the statute.").

Here, the record supports that Hitt intended to use the victims as hostages.[54]

Several victims testified that, while Hitt bound their wrists together, he said he would

"make this a hostage situation" if police were called.[55] This evidence clearly reveals

Hitt's intent to hold the victims "'as security for the performance, or forbearance, of

some act by a third person [e.g., the police].'"[56] Although no demands were made on

third persons and the incident involved communications only between Hitt and the

victims, a rational trier of fact could find, drawing all reasonable inferences favorable to

the State, that Hitt intended to hold the victims as hostages if the police arrived. That

Hitt did not carry out this intent when police arrived does not diminish the evidence of

his intent to do so when he bound the women. Therefore, this alternative means is

supported by sufficient evidence, and we affirm his first degree kidnapping convictions.

Hitt contends that the cumulative effect of the trial court's errors prejudiced him

and likely materially affected the jury's verdict. "The cumulative error doctrine applies

only when several trial errors occurred which, standing alone, may not be sufficient to

justify a reversal, but when combined together, may deny a defendant a fair trial."[57]

Here, we accept the State's concession as to a single issue—the evidence of Hitt's

2002 rape conviction. There is no cumulative error.

---

[54] Based on the victims' testimony, it is clear that Hitt did not in fact use the victims as hostages when police arrived.

[55] RP (Mar. 4, 2013) at 542; see also RP (Mar. 5, 2013) at 680 ("That we would be hostages if the police came.").

[56] Garcia, 179 Wn.2d at 839 (quoting State v. Crump, 82 N.M. 487, 493, 484 P.2d 329 (1971)).

[57] State v. Hodges, 118 Wn. App. 668, 673-74, 77 P.3d 375 (2003).

15

Because we accept the State's concession that his sexual motivation special verdicts should be reversed, we need not address Hitt's remaining persistent offender arguments.[58] Moreover, because we reverse Hitt's sexual motivation special verdicts, which served as Hitt's second strike, Hitt will not be subject to being classified as a persistent offender at resentencing. This renders his remaining arguments moot.

We reverse the sexual motivation special verdicts as applied to counts I and III, affirm the first degree burglary conviction, first degree kidnapping convictions, first degree robbery convictions, and deadly weapon sentence enhancements and remand for resentencing.

WE CONCUR:

---

[58] Hitt agrees that we need not address his persistent offender arguments if we accept the State's concession for the sexual motivation special verdicts.