# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 73452-1-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| DOMINGO MONTAR-MORALES, | ) | |
| | ) | |
| Appellant. | ) | FILED: May 8, 2017 |
| | ) | |

TRICKEY, A.C.J. — Domingo Montar-Morales appeals his jury convictions of rape of a child in the second degree, residential burglary, theft in the second degree, and theft in the third degree. Montar-Morales contends that the trial court erred in concluding that police officers did not exceed the scope of Terry v. Ohio[1] when they transported him to a hospital against his will while he was being detained as a suspect, that he was denied a fair trial when the trial court denied his motion to sever his nonviolent property offenses from his sex offenses, and that the State did not carry its burden of proving beyond a reasonable doubt the penetration element of rape of a child. Finding no error, we affirm.

## FACTS

On July 18, 2014, Montar-Morales was spending time with Noel Lopez-Flores around Lopez-Flores's apartment, located at 1916 Harrison Street in Mount Vernon. Lopez-Flores's aunt Maria Flores-Garcia and her two children, including

---

[1] 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968).

12-year-old Y.J., were staying in the apartment that night. Montar-Morales and Lopez-Flores entered the apartment around 11:00 p.m. When Lopez-Flores went to sleep, Montar-Morales was watching television in Lopez-Flores's room.

Y.J. and her relatives were sleeping in the living room of the apartment. Around 1:00 a.m., Y.J. was awoken by a hand touching her. The hand touched her "stomach, between the front and the back, just from the back."[2] At trial, Y.J. indicated on a diagram that she had been touched on the left buttock. Y.J. stated that the hand touching her there went "halfway the knuckle."[3] In response to the prosecution's question, "And did that go inside of you or stay outside?" Y.J. responded, "Inside."[4] During cross-examination, Y.J. acknowledged that she had previously told investigators and counsel that nothing had entered her anus or vagina.

Y.J. could not see the face of the person touching her. Y.J. unsuccessfully attempted to wake up her mother while she was being touched. Y.J. then got up and locked herself in the bathroom, where she remained for 20 minutes until her mother asked her to come out. There was nobody else in the living room when Y.J. exited the bathroom. Montar-Morales came out of a separate room and was confronted by Y.J.'s mother and cousin, who did not recognize Montar-Morales, and told him to leave or they would call the police.

Around 1:00 a.m., Lucia Perez-Ventura and Margarito Lopez-Ramirez were

---

[2] Report of Proceedings (RP) (January 29, 2015) at 74.
[3] RP (January 29, 2015) at 105-106. Y.J. answered affirmatively to the prosecution's follow-up question of "Halfway up to the knuckle of a finger?" RP (January 29, 2015) at 106.
[4] RP (January 29, 2015) at 106.

asleep in their apartment unit in 1912 Harrison Street, which is very close to 1916 Harrison Street. Perez-Ventura was awoken by a noise in the apartment caused by an intruder. She woke Lopez-Ramirez, who pursued the intruder. Although the intruder managed to escape, Lopez-Ramirez was able to identify him as Montar-Morales. Lopez-Ramirez returned to the apartment, and he and Perez-Ventura found that his wallet and various other items of property were missing.

Montar-Morales attempted to reenter 1916 Harrison Street through a window, but ran away when Elizabeth Ramirez-Flores turned on a light. René Jiminez-Flores and Nicodemo Lopez pursued Montar-Morales. Jiminez-Flores and Lopez caught Montar-Morales, and the three briefly fought in the street.

The police received a call at 1:06 a.m. about three males fighting in the street, and were also told of a possible sexual assault. Officers Chester Curry and Joel McCloud responded to the call, and Sergeant Mike Moore arrived shortly thereafter as supervisor. When they arrived, Jiminez-Flores and Lopez had restrained Montar-Morales, and Montar-Morales was bleeding from a head injury. The officers called for medical assistance. The officers interviewed Jiminez-Flores and Lopez, who told them that Montar-Morales had been involved with the reported sexual assault.

The officers instructed Montar-Morales to remain on the ground, but he did not comply. The officers eventually placed Montar-Morales in handcuffs and informed him that he was being detained for an investigation of an assault, based on the reports of the sexual assault and Montar-Morales's failure to comply. Officer McCloud performed a pat down of Montar-Morales for weapons and did not find

3

any.

Paramedics arrived and evaluated Montar-Morales. The paramedics examined him and felt that a physician needed to attend to Montar-Morales's head injury and conduct further checks. Over Montar-Morales's objections, Officer Moore decided that Montar-Morales was in need of medical assistance based on the paramedics' statements, and transported him to Skagit Valley Hospital's emergency department, where they arrived around 1:30 a.m.

While Montar-Morales was being treated, officers interviewed Y.J., the occupants of 1916 Harrison Street, and the occupants of 1912 Harrison Street who had reported a burglary. The officers called in Detective Jerrad Ely, who interviewed Y.J. and her mother; Y.J. refused to agree to a sexual assault examination. Detective Ely later determined that a photomontage was not necessary to identify Montar-Morales because Lopez-Ramirez knew him, and Lopez and Jiminez-Flores had been with him at the time the police arrived. Montar-Morales had washed his hands at the hospital as part of his treatment, so DNA evidence was unavailable.

At 1:36 a.m., Sergeant Moore notified Officer McCloud, who was with Montar-Morales at the hospital, that the investigation had produced probable cause to arrest. Officer McCloud advised Montar-Morales of his constitutional rights and requested that the hospital evaluate his fitness for jail. The hospital declared Montar-Morales fit and released him to Officer McCloud. As Montar-Morales left the treatment table, a nurse noticed that a wallet had dropped containing the identification of Lopez-Ramirez. When Montar-Morales was booked

into jail, additional property belonging to Lopez-Ramirez and his family was recovered.

The State charged Montar-Morales by third amended information with rape of a child in the second degree, child molestation in the second degree, residential burglary, theft in the second degree, theft in the third degree, and attempted residential burglary.

Montar-Morales moved to suppress evidence and statements from his arrest. Montar-Morales also moved to sever his child sex offense charges from those for property crimes before trial and following jury selection. The trial court denied Montar-Morales's motions.

At trial, Montar-Morales moved to dismiss the rape of a child charge for insufficient evidence. The court denied the motion.

The jury convicted Montar-Morales on all charges except attempted residential burglary. The trial court vacated the child molestation conviction on double jeopardy grounds based on the child rape conviction. The trial court denied Montar-Morales's posttrial motion to arrest judgment.

Montar-Morales appeals.

## ANALYSIS

### Pretrial Motion to Suppress

Montar-Morales argues that the trial court erred when it denied his motion to suppress evidence obtained when he was arrested without probable cause. Montar-Morales contends that the police exceeded the scope of Terry when they transported him to the hospital because his detention was not limited in duration

5

or location and did not remain investigatory in purpose. Because the officers acted reasonably under the totality of the circumstances when they transported Montar-Morales to the hospital, we affirm.

Generally, warrantless searches and seizures are per se unreasonable. State v. Houser, 95 Wn.2d 143, 149, 622 P.2d 1218 (1980). One exception to the warrant requirement is "a brief investigatory detention of a person, known as a Terry stop." State v. Z.U.E., 183 Wn.2d 610, 617, 352 P.3d 796 (2015) (referring to Terry, 392 U.S. 1). A Terry stop requires a well-founded suspicion that the defendant is engaged in criminal conduct. State v. Doughty, 170 Wn.2d 57, 62, 239 P.3d 573 (2010). The police officer must be able to point to "'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion.'" State v. Williams, 102 Wn.2d 733, 739, 689 P.2d 1065 (1984) (quoting Terry, 392 U.S. at 21)). If the stop goes beyond investigatory purposes, it becomes an arrest and requires a valid arrest warrant or probable cause. State v. Flores, 186 Wn.2d 506, 520-21, 379 P.3d 104 (2016).

The investigative methods employed must be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time. Williams, 102 Wn.2d at 738 (citing Florida v. Royer, 460 U.S. 491, 500, 103 S. Ct. 1319, 75 L. Ed. 2d 229 (1983)). Drawn guns and the use of handcuffs during an investigatory stop are permissible only when police have a legitimate fear of danger. Williams, 102 Wn.2d at 740 n.2.

"An investigative detention must last no longer than is necessary to satisfy the purpose of the stop." State v. Bray, 143 Wn. App. 148, 154, 177 P.3d 154

(2008) (citing Williams, 102 Wn.2d at 738). The scope and duration of the stop may be extended if the officers' suspicions are confirmed by the investigation. State v. Acrey, 148 Wn.2d 738, 747, 64 P.3d 594 (2003). For example, an investigatory detention lasting 30 minutes may be reasonable under the circumstances. See Bray, 143 Wn. App. at 154. In Bray, officers were justified in detaining the defendant for an extended period of time because his explanation of what he was doing did not dispel the officers' suspicion, and they were reasonable in checking his criminal history and determining whether other areas had been broken into. 143 Wn. App. at 154.

Police do not exceed the scope of an investigative stop when they move a suspect for reasons of safety and security, or so that a crime witness can make an identification, if the distance is short and the police have both knowledge of the crime committed and articulable suspicion that the suspect committed it. State v. Lund, 70 Wn. App. 437, 447-48, 853 P.2d 1379 (1993); see also United States v. Richards, 500 F.2d 1025 (9th Cir. 1974); State v. Wheeler, 108 Wn.2d 230, 236-37, 737 P.2d 1005 (1987). For example, an investigative stop involving frisking, handcuffing, and transporting the defendant two blocks to the scene of the burglary so a witness could identify the defendant did not rise to the level of an arrest. Wheeler, 108 Wn.2d at 235-36.

In evaluating the reasonableness of an investigative stop, courts consider the totality of the circumstances, including the officer's training and experience, the location of the stop, the conduct of the person detained, the purpose of the stop, the amount of physical intrusion upon the suspect's liberty, and the length of time

7

the suspect is detained. State v. Glover, 116 Wn.2d 509, 514, 806 P.2d 760 (1991). The burden is on the prosecution to show that a warrantless search and seizure falls within an exception. Houser, 95 Wn.2d at 149.

Here, the officers' initial detention of Montar-Morales was a valid Terry stop supported by reasonable articulable suspicion. The officers were responding to calls reporting three males fighting in the street and a possible sexual assault. When the officers arrived on the scene of the fighting, Jiminez-Flores and Lopez told them that Montar-Morales was the one involved in the reported sexual assault. The officers had reasonable articulable suspicion to detain Montar-Morales based on the calls reporting fighting in the street and the allegation that he was involved in the sexual assault. Therefore, the initial detention of Montar-Morales was justified.

The officers' decision to handcuff Montar-Morales at the scene did not elevate the detention into an arrest requiring probable cause. The officers were responding to a report of a fight and a sexual assault, and were informed at the scene that Montar-Morales was responsible for the sexual assault. Montar-Morales did not comply with officer requests to remain seated. The officers' use of handcuffs to detain Montar-Morales was justified by the nature of the reported incidents and Montar-Morales's failure to cooperate.

The duration of Montar-Morales's detention did not exceed the scope of a valid Terry stop. Officer McCloud placed Montar-Morales in handcuffs around 1:10 a.m., and Officer McCloud advised Montar-Morales of his rights at 1:37 a.m. Twenty-seven minutes was a reasonable length of time to detain Montar-Morales.

8

The officers were initially responding to a report of fighting and an allegation of sexual assault. While investigating the alleged sexual assault, they learned of a burglary that had happened nearby, and were informed that Montar-Morales was the likely perpetrator. The serious nature of the crimes and the need to investigate both crime scenes justified an investigatory stop of a fairly long duration.

The officers did not exceed the scope of Terry when they transported Montar-Morales to the hospital. Under the totality of the circumstances, the officers acted reasonably in obtaining treatment for Montar-Morales's head laceration during his investigatory detention. The officers called for medical assistance soon after arriving at the scene in order to examine Montar-Morales's injury. The paramedics who evaluated Montar-Morales at the scene recommended that he receive further treatment at the hospital. The officers were acting on this recommendation when they moved Montar-Morales from the scene of his initial detention to the hospital. Police officers cannot reasonably be expected to ignore the recommendation of paramedics that an injured party receive additional medical treatment at a hospital rather than simply being treated at the scene of the injury.[5]

The continued use of handcuffs while Montar-Morales was transported and received medical treatment at the hospital was justified in light of his noncompliant

---

[5] Montar-Morales argues for the first time on appeal that his constitutional right to privacy was violated when he was given medical treatment without his consent. The constitutional right to privacy includes autonomy over one's medical care, and includes the right to refuse treatment. See, e.g., In re Welfare of Colyer, 99 Wn.2d 114, 119-22, 660 P.2d 738 (1983) (discussing common law and constitutional bases for patients' right to refuse treatment); see also RCW 7.70.050 (statutory requirement to obtain informed consent by health care provider). Montar-Morales's refusal to consent to medical treatment is not relevant to a Fourth Amendment search and seizure analysis under Terry. Moreover, Montar-Morales raises this argument for the first time on appeal, and we need not reach the merits of his claim. RAP 2.5(a).

behavior. Further, the record suggests that, if the officers had not transported Montar-Morales to the hospital, they would have detained him at the scene for the same amount of time. Therefore, under the totality of the circumstances, the officers acted reasonably in transporting Montar-Morales to the hospital for treatment within the time frame during which they could have permissibly detained him at the scene.

Sufficiency of the Evidence – Rape of a Child

Montar-Morales contends that the State did not offer sufficient evidence to prove that he raped Y.J. beyond a reasonable doubt. Specifically, he argues that the State did not prove that he penetrated Y.J.'s anus. Because Y.J.'s testimony was sufficient to sustain the jury's verdict, we conclude there was no error.

Due process requires that the State prove every element of an offense beyond a reasonable doubt. Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Evidence is sufficient to sustain a conviction if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. State v. Green, 94 Wn.2d 216, 221-22, 616 P.2d 628 (1980). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." State v. Salinas, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." Salinas, 119 Wn.2d at 201.

The jury's role includes resolving conflicting testimony and evaluating the persuasiveness of the evidence. State v. Rooth, 129 Wn. App. 761, 773, 121 P.3d 755 (2005); State v. Walton, 64 Wn. App. 410, 415-16, 824 P.2d 533 (1992). Jury determinations of credibility are not subject to review. State v. Camarillo, 115 Wn.2d 60, 71, 794 P.2d 850 (1990).

"A person is guilty of rape of a child in the second degree when the person has sexual intercourse with another who is at least twelve years old but less than fourteen years old and not married to the perpetrator and the perpetrator is at least thirty-six months older than the victim." RCW 9A.44.076(1). Sexual intercourse "has its ordinary meaning and occurs upon any penetration . . . of the vagina or anus however slight, by an object."[6] RCW 9A.44.010(1)(a), (b). Penetration of the buttocks, but not the anus, is insufficient to sustain a rape conviction." State v. A.M., 163 Wn. App. 414, 421, 260 P.3d 229 (2011).

Here, a rational trier of fact could have found that Montar-Morales committed child rape. Y.J. indicated that the hand had touched her around the buttocks by drawing on a diagram. Y.J. then testified that the hand touching her went halfway up to the knuckle of a finger "inside" of her. Montar-Morales argues that Y.J.'s testimony is insufficient to prove sexual intercourse beyond a reasonable doubt because Y.J. initially stated that her vagina and anus were not penetrated. Similarly, Montar-Morales suggests that Y.J.'s testimony and diagram are ambiguous, and are less supportive of anal rape than penetration of the buttocks alone based on her other testimony. This court does not review the jury's

---

[6] Clerk's Papers (CP) at 42 (Instruction 8).

determination of credibility or its resolution of conflicting testimony. The jury was free to credit Y.J.'s statement that the hand touching her had gone "inside" of her over her conflicting statements.

Penetration of the anus is a reasonable inference from Y.J.'s diagram and her statement that the hand had gone "inside" of her. This court takes the State's evidence as true and draws all reasonable inferences in favor of the State in a sufficiency challenge. Y.J.'s testimony and diagram are sufficient to establish the element of sexual intercourse.

## Motion to Sever

Montar-Morales argues that the trial court abused its discretion when it denied his motion to sever his nonviolent property offenses from his sex offenses.[7] Montar-Morales contends that the denial of his motion to sever deprived him of his right to a fair trial. We disagree because the trial court's denial of Montar-Morales's motion did not cause undue prejudice.

A trial court shall grant a motion to sever if it determines "that severance will promote a fair determination of the defendant's guilt or innocence of each offense." CrR 4.4(b). A defendant seeking severance has the burden of demonstrating that trying the counts together would be manifestly prejudicial, and outweigh any

---

[7] The State filed a motion to strike ineffective assistance of counsel arguments raised for the first time in Montar-Morales's reply brief, based on counsel's alleged waiver of his severance claim. A defendant's motion for severance must be made before trial, and the defendant must renew his motion to sever on the same ground before or at the close of all evidence. CrR 4.4(a)(1), (2). A failure to renew the motion constitutes a waiver of severance. CrR 4.4(a)(2). Montar-Morales's counsel moved for severance prior to trial. Montar-Morales's counsel renewed the motion at trial, both in briefing and orally after jury selection. Because defense counsel properly renewed the motion to sever, the State's motion to strike is denied. See Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (2005).

concern for judicial economy. State v. Bythrow, 114 Wn.2d 713, 718, 790 P.2d 154 (1990). Joinder of offenses may prejudice a defendant in that

> "(1) he may become embarrassed or confounded in presenting separate defenses; (2) the jury may use the evidence of one of the crimes charged to infer a criminal disposition on the part of the defendant from which is found his guilt of the other crime or crimes charged; or (3) the jury may cumulate the evidence of the various crimes charged and find guilt when, if considered separately, it would not so find."

State v. Smith, 74 Wn.2d 744, 755, 446 P.2d 571 (1968) (quoting Drew v. United States, 331 F.2d 85, 88 (D.C. Cir. 1964)), vacated in part, 408 U.S. 934, 92 S. Ct. 2852, 33 L. Ed. 2d 747 (1972), overruled on other grounds, State v. Gosby, 85 Wn.2d 758, 539 P.2d 680 (1975). The "prejudice potential of prior acts is at its highest" in cases involving sexual offenses. State v. Ramirez, 46 Wn. App. 223, 227, 730 P.2d 98 (1986) (citing State v. Saltarelli, 98 Wn.2d 358, 363, 655 P.2d 697 (1982)); see also State v. Harris, 36 Wn. App. 746, 752, 677 P.2d 202 (1984).

A reviewing court uses several factors to determine whether a trial court's denial of a severance motion was unduly prejudicial to the defendant:

> (1) the strength of the State's evidence on each of the counts; (2) the clarity of the defenses on each count; (3) the propriety of the trial court's instruction to the jury regarding the consideration of evidence of each count separately; and (4) the admissibility of the evidence of the other crime.

State v. Cotten, 75 Wn. App. 669, 687, 879 P.2d 971 (1994); State v. Eastabrook, 58 Wn. App. 805, 811-12, 795 P.2d 151 (1990).

A trial court's refusal to sever offenses under CrR 4.4(b) is reviewed for manifest abuse of discretion, and the defendant has the burden of demonstrating that abuse on appeal. Cotten, 75 Wn. App. at 686-87.

A trial court's refusal to sever offenses under CrR 4.4(b) is reviewed for manifest abuse of discretion, and the defendant has the burden of demonstrating that abuse on appeal. Cotten, 75 Wn. App. at 686-87.

The trial court did not manifestly abuse its discretion in denying Montar-Morales's motion to sever. The court found that Montar-Morales's charges were intertwined. The court considered the proximity of the two addresses, the short time frame of the chase and apprehension, and the potential sexual motivation linking the offenses. The court determined that, collectively, there was a similarity of criminal activity, location, and time involving the potential thefts and sexual misconduct at each location that weighed against severance of the charges.

Even assuming that Montar-Morales was prejudiced by the trial court's refusal to sever his sexual offenses from his nonviolent property offenses, he was not unduly prejudiced. First, the State had a strong case for all charged offenses. The State offered circumstantial evidence, the in-court testimony of Y.J. regarding where the hand touched her, that it went "inside," and the diagram showing where the touching occurred. This was not outweighed by the physical and testimonial evidence offered on the property crime charges.

Second, Montar-Morales was not prejudiced in his ability to defend against his property crime charges due to the joinder of the claims. Montar-Morales elected to not submit Lopez-Ramirez's statement that he initially thought Montar-Morales was in jail and could not be the perpetrator, because Montar-Morales feared that the jury would decide that he was predisposed to criminal activity. The statement of belief that Montar-Morales was in jail would be equally prejudicial to

14

both sex offenses and property offenses by suggesting a criminal disposition. Montar-Morales was not more prejudiced from offering the statement in defense of the property crimes than he was from offering it regarding the child sex offenses.

Third, the trial court's limiting instruction was sufficient to address any prejudice resulting from joining the counts. The trial court instructed the jury that: "A separate crime is charged in each count. You must decide each count separately. Your verdict on one count should not control your verdict on any other count."[8] The jury is presumed to follow the trial court's instructions. State v. Bourgeois, 133 Wn.2d 389, 409-10, 945 P.2d 1120 (1997). The court's instruction told the jury that a finding of guilt on any one count should not weigh in their decision on any other. We presume that the jury followed the court's limiting instruction, and did not consider Montar-Morales's property crimes when deciding his sexual offenses.

Montar-Morales argues that he was prejudiced because evidence for the child rape charge should not have been admissible against him in a trial on the property offenses.

Cross-admissibility considerations involve evaluating whether the evidence of various offenses would be admissible to prove other charges if each offense was tried separately. Ramirez, 46 Wn. App. at 226. Res gestae allows otherwise inadmissible evidence to come in to show the immediate context of the occurrence. State v. Lane, 125 Wn.2d 825, 831, 889 P.2d 929 (1995); ER 404(b).

---

[8] CP at 40 (Instruction 6).

The trial court ruled that the evidence supporting the property crimes was sufficiently close in time and place to fall within res gestae. The trial court considered the time, geographic proximity, and link of possible sexual motivation in its ruling. Montar-Morales's actions formed a common series of events that were close enough in time and space to justify the trial court's finding of res gestae. We cannot say that the trial court manifestly abused its discretion in finding that Montar-Morales's actions fell within res gestae.

In sum, Montar-Morales has failed to produce sufficient evidence of prejudice to outweigh concerns for judicial economy in trying his nonviolent property charges and sexual misconduct charges separately. We cannot say that the trial court manifestly abused its discretion in denying his motion to sever.

Affirmed.

Trickey, ACJ

WE CONCUR:

Cox, J.