FILED
COURT OF APPEALS
DIVISION II

2015 AUG -4 AM 9: 57

STATE OF WASHINGTON

DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 45411-4-II |
| Respondent, | UNPUBLISHED OPINION |
| .v. | |
| DAN A. PHILLIPS, | |
| Appellant. | |

BJORGEN, J. — Dan Phillips appeals his convictions for domestic violence first and fourth degree assault, first degree unlawful possession of a firearm, and two counts of domestic violence criminal solicitation to commit first degree murder. Phillips contends that (1) insufficient evidence supported the domestic violence first degree assault conviction, (2) the trial court abused its discretion when it denied his motion to sever the trials on the two solicitation charges from each other and from the assault charges, (3) his trial counsel rendered ineffective assistance by failing to move during trial to sever the solicitation and assault charges and by failing to object to the admission of some evidence, and (4) the trial court violated his right to confront the witnesses against him by limiting cross-examination of one of the State's witnesses.

We hold that (1) sufficient evidence supported the challenged assault conviction, (2) Phillips waived any claim of error in the denial of the severance motion, (3) Phillips's attorney did not render ineffective assistance, and (4) the trial court permissibly limited Phillips's cross-examination of the State's witness. We affirm.

FACTS

Phillips's former girlfriend, Kelly Contraro, arrived at his house in the early hours of August 1, 2012 to find Phillips and his nephew, Brandon Phillips, there.[1]  An argument ensued. Eventually, enraged, Phillips went into his room and returned with a rifle, which he "put . . . to [Contraro's] head, . . . heart, . . . stomach, [and] . . . legs" before firing it into the ground just in front of her.  Verbatim Report of Proceedings (VRP) (Sept. 5, 2013) at 957.

At trial, Contraro, Phillips, and Brandon offered conflicting testimony as to what happened next, but all agreed that approximately 15 seconds after that first shot, a second shot was fired that inflicted a grievous wound to Contraro's leg.  In the aftermath of the second shot, Phillips and Brandon discussed what to do with Contraro, considering dragging her out into the nearby woods and leaving her there.

Phillips eventually decided to take Contraro to the hospital and dragged her to her truck, which he drove into a ditch while backing up.  While Phillips was outside the truck, Contraro called her nephew and his girlfriend, telling them both that Phillips had shot her.  Contraro also called 911 dispatch, stating that she had been shot and naming Brandon as the shooter.  Officers responded and arrested Phillips.

While jailed for the shooting, Phillips discussed the incident with his cell mate, admitting that he had shot Contraro but stating that he was "going with" the story that Brandon had shot her.  VRP (Sept. 5, 2013) at 807.  Phillips later told his cell mate that he had real property worth "a hundred to 110,000 dollars" and said he would give it to the cell mate for "tak[ing] [Contraro] out."  VRP (Sept. 5, 2013) at 809.  Phillips clarified this statement by telling the cell mate that

---

[1] We refer to the appellant by his surname and Brandon Phillips by his first name for clarity's sake.  We intend no disrespect by doing so.

"[h]e wanted [Contraro] dead." VRP (Sept. 5, 2013) at 809. His cell mate declined the offer and later informed the State about it.

Phillips had similar conversations with another inmate who later became his cell mate. Phillips discussed how he had ended up in jail, admitting that he had shot Contraro in the leg. According to Phillips, the shooting left him "in a bad spot, legally," but "with [Contraro] out of the picture . . . there would be no witnesses in his case." VRP (Sept. 5, 2013) at 820. Consequently, Phillips also offered to give this cell mate real property if he would kill Contraro. This cell mate also informed police of Phillips's offer, and police later arranged to record a call Phillips made to the cell mate where the two confirmed the plan to kill Contraro.

The State ultimately charged Phillips with domestic violence first degree assault, unlawful possession of a firearm, two counts of domestic violence criminal solicitation to commit first degree murder, and domestic violence fourth degree assault.[2]

Before trial, the State moved in limine to exclude the testimony of Brandon's former girlfriend, whom the defense wanted to testify about a 2009 incident in which Brandon apparently fired a gun either near her or at her and had been convicted of unlawful possession of a firearm. Phillips explained that he intended to call the girlfriend only after cross-examining Brandon about the episode. When the trial court asked how any testimony from Brandon on the matter would be relevant, Phillips essentially argued the testimony would show Brandon's propensity to commit assault with a firearm. When the trial court then asked, "Well, is propensity evidence admissible for purposes of impeachment," Phillips's counsel answered, "No, it's relevant to my client's defense." VRP (Aug. 21, 2013) at 107. The trial court ultimately

---

[2] The domestic violence fourth degree assault charge arose from an incident occurring months before the shooting. The facts of the incident are not relevant to this appeal.

granted the State's motion and prohibited cross-examination of Brandon about the incident or evidence about it in Phillips's case-in-chief.

Phillips moved, before trial, to sever the solicitation charges from the assault charges. When the trial court denied this motion, he did not renew it at any point during trial.

At trial, Contraro testified that, just before the shooting, she and Phillips had a fight and that Phillips responded to the fight by retrieving a gun from his room and threatening her with it. Contraro acknowledged that she could not see who had fired the shot that hit her leg, because she curled up into a fetal position and closed her eyes when Phillips began threatening her. She testified, though, that she believed Phillips had been the shooter, because he had the gun just before the shot was fired. She admitted that she initially told 911 dispatch that Brandon was the shooter, but explained this as an irrational desire to protect Phillips, who she had dated for nine years and who she lived with until he assaulted her in the incident giving rise to the domestic violence fourth degree assault conviction currently before us.

Brandon testified that he, Phillips, and Contraro had been the only three people in the house at the time of the shooting. He also testified that Phillips had become angry with Contraro, got his gun, and pointed it at Contraro. Brandon testified that he then turned his head away and heard a shot. Brandon denied that he shot Contraro.

Contraro's nephew and her nephew's girlfriend both testified about the frantic calls they had received from Contraro after the shooting. Both testified that Contraro had told them that Phillips had shot her.

Both of Phillips's former cell mates testified against him. Each testified that, during their incarceration with him, Phillips admitted to shooting Contraro. Both also testified that Phillips had told them that if they killed Contraro, he would give them real property. One former cell

mate stated that Phillips explicitly linked his desire to kill Contraro to a desire to prevent her from testifying against him. Both former cell mates admitted that they had received reduced jail time for their cooperation with the State.

Phillips took the stand in his own defense. He denied shooting Contraro, claiming that Brandon had done so. Phillips offered no testimony about the solicitation charges. The jury convicted Phillips on all counts. He now appeals.

## ANALYSIS

### I. SUFFICIENCY OF THE EVIDENCE

Phillips argues that insufficient evidence supports the domestic violence first degree assault conviction because no witness testified to seeing Phillips shoot Contraro. We disagree, finding the evidence sufficient.

Due process requires the State to prove every element of a charged crime beyond a reasonable doubt before the jury may convict a defendant. *State v. O'Hara*, 167 Wn.2d 91, 105, 217 P.3d 756 (2009) (citing U.S. CONST. amend. XIV; WASH CONST. art. I, § 22; *Jackson v. Virginia*, 443 U.S. 307, 311, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *In re Winship*, 397 U.S. 358, 365-66, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970)). When reviewing a claim that the State has failed to introduce sufficient evidence to discharge that burden, we view all the evidence in the light most favorable to the State to determine whether any rational trier of fact could have found the elements of the crime beyond a reasonable doubt. *State v. Kintz*, 169 Wn.2d 537, 551, 238 P.3d 470 (2010). A defendant making a sufficiency challenge admits the truth of the State's evidence and all inferences that may reasonably be drawn therefrom. *Kintz*, 169 Wn.2d at 551. We do not distinguish between circumstantial and direct evidence when determining whether the

State introduced sufficient evidence for a conviction: either suffices to meet the State's burden. *Kintz*, 169 Wn.2d at 551.

Under RCW 9A.36.011, a person commits first degree assault, among other ways, if "he or she, with intent to inflict great bodily harm . . . [a]ssaults another and inflicts great bodily harm." The trial court instructed the jury on only one of the three common law definitions of assault, actual battery, informing jurors that "[a]n assault is an intentional touching or striking or shooting of another person that is harmful or offensive." Clerk's Papers at 306. RCW 10.99.020(5), which defines domestic violence as used in the State's special allegation; provides that first degree assault is a crime of domestic violence "when committed by one family or household member against another." "Family or household members," as relevant here, include "person sixteen years of age or older who are presently residing together or who have resided together in the past and who have or have had a dating relationship" as well as "adult persons who are presently residing together or who have resided together in the past." RCW 10.99.020(3).

The State presented sufficient evidence for a rational fact finder to determine that he had committed domestic violence first degree assault. Two of Phillips's former cell mates testified that he admitted to shooting Contraro. Similarly, Contraro's nephew and his girlfriend testified to speaking with Contraro shortly after the shooting; both testified that Contraro named Phillips as the shooter. Contraro herself testified at trial that she believed Phillips had shot her and that he had done so after threatening her with the rifle. Brandon and Phillips both testified that they and Contraro were the only three in the house at the time of the shooting, and Brandon denied that he had fired the shot that struck her. The gun used in the shooting was Phillips's, and Phillips, Contraro, and Brandon all testified that Phillips had the gun in his hand shortly before

6

the shooting. The shooting inflicted a grievous injury on Contraro. In addition, Contraro and Phillips had shared a romantic relationship in the past and had lived together before the assault. From this evidence a rational jury could find that the necessary assault, intent, injury, and familial or household relationship existed.

Phillips, nevertheless, argues that without a witness testifying to watching him assault Contraro, the State presented insufficient evidence, citing *State v. Johnson*, 90 Wn. App. 54, 73-74, 950 P.2d 981 (1998). *Johnson*, however, held that eyewitness testimony was sufficient for an assault conviction, which does not imply that it is necessary for one. 90 Wn. App. at 73-74. *Johnson* does not require that we reverse an assault conviction based on sufficiency grounds absent an eyewitness testifying that he or she saw the shooting. *See Johnson*, 90 Wn. App. at 73-74. Indeed, binding precedent requires us to reject that argument. *Kintz*, 169 Wn.2d at 551 (circumstantial evidence sufficient to sustain a conviction in the face of a sufficiency challenge).

## II. SEVERANCE

Phillips next contends that the trial court abused its discretion when it denied his motion to sever the solicitation charges from each other and from the remaining offenses. The State argues that Phillips waived any direct challenge to the trial court's denial of his motion. We agree with the State.

The court rule governing the severance of offenses for trial has specific provisions governing waiver. Where the trial court denies a pretrial motion for severance, the defendant must "renew the motion on the same ground before or at the close of all the evidence" at trial to avoid waiving any challenge to the denial of the motion to sever. CrR 4.4(a)(2); *State v. Henderson*, 48 Wn. App. 543, 551, 740 P.2d 329 (1987); *State v. Ben-Neth*, 34 Wn. App. 600, 606, 663 P.2d 156 (1983).

7

Phillips made a pretrial motion for severance that the trial court denied. He did not renew his motion at trial either before or at the close of evidence. He thus waived any claim of error related to the denial of his motion for severance. CrR 4.4(a)(2); *Henderson*, 48 Wn. App. at 551; *Ben-Neth*, 34 Wn. App. at 606.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Phillips also contends that his counsel rendered ineffective assistance by (1) failing to move to sever the charges at trial in accordance with CrR 4.4 and (2) failing to object to the admission of the evidence of solicitation for purposes of Phillips's assault trial. Both of these claims fail.

The state and federal constitutions guarantee criminal defendants the right to effective assistance from counsel.[3] *State v. Grier*, 171 Wn.2d 17, 32, 246 P.3d 1260 (2011), *cert. denied*, 135 S. Ct. 153 (2014). Prevailing on an ineffective assistance claim requires the defendant to show two elements. *Grier*, 171 Wn.2d at 32-33 (quoting *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984))).

First, the defendant must show that his or her counsel performed deficiently. *Grier*, 171 Wn.2d at 32-33 (quoting *Thomas*, 109 Wn.2d at 225-26). To do so, the defendant must establish that counsel's performance fell below objective standards of reasonableness. *Grier*, 171 Wn.2d at 33 (quoting *Thomas*, 109 Wn.2d at 225-26). Our review is deferential to trial counsel's choices, and we strongly presume counsel performed reasonably. *Grier*, 171 Wn.2d at 33 (quoting *State v. Kyllo*, 166 Wn.2d 856, 862, 215 P.3d 177 (2009)).

---

[3] The due process clause of the Fourteenth Amendment to the United States Constitution renders the Sixth Amendment's guarantee of the right to counsel applicable to state criminal proceedings. *Gideon v. Wainwright*, 372 U.S. 335, 342, 83 S. Ct. 792, 9 L. Ed. 2d 799 (1963).

Second, the defendant must show that counsel's deficient performance prejudiced him or her. *Grier*, 171 Wn.2d at 32-33 (quoting *Strickland*, 466 U.S. at 691). This requires the defendant to "establish that 'there is a reasonable probability that, but for counsel's deficient performance, the outcome of the proceedings would have been different.'" *Grier*, 171 Wn.2d at 34 (quoting *Kyllo*, 166 Wn.2d at 862). Where the defendant claims that counsel performed deficiently by failing to make a motion, the defendant, to show prejudice, must show that the trial court would probably have granted the motion, *State v. McFarland*, 127 Wn.2d 322, 337 n.4, 899 P.2d 1251 (1995), and that had the motion been granted, the jury likely would have found him or her not guilty beyond a reasonable doubt. *State v. Sutherby*, 165 Wn.2d 870, 884, 204 P.3d 916 (2009).

A.   Severance[4]

Phillips first argues that his attorney rendered ineffective assistance by failing to renew the motion to sever the solicitation charges from each other and from the assault charges at trial. Assuming that counsel performed deficiently, Phillips's claim fails because he cannot show that the trial court would probably have granted the motion. Consequently, he cannot make the necessary showing of prejudice.

Washington law "disfavors separate trials," *State v. McDaniel*, 155 Wn. App. 829, 860, 230 P.3d 245 (2010), based on concerns about judicial economy. *See State v. Bryant*, 89 Wn. App. 857, 864, 950 P.2d 1004 (1998). However, severance is appropriate where "there is a risk that the jury will use the evidence of one crime to infer the defendant's guilt for another crime or

---

[4] Although a failure to renew a motion for severance at trial waives any claim of error in the denial of a pretrial motion for severance, defendants may raise the issue through an ineffective assistance of counsel claim. *State v. McDaniel*, 155 Wn. App. 829, 859, 230 P.3d 245 (2010).

to infer a general criminal disposition." *Sutherby*, 165 Wn.2d at 883. Accordingly, CrR 4.4(b) provides that the trial court "shall grant a severance of offenses whenever . . . the court determines that severance will promote a fair determination of the defendant's guilt or innocence of each offense."

To determine whether severance is warranted, courts consider four factors:

"(1) the strength of the State's evidence on each count; (2) the clarity of defenses as to each count; (3) court instructions to the jury to consider each count separately; and (4) the admissibility of evidence of the other charges even if not joined for trial."

*Sutherby*, 165 Wn.2d at 884-85 (quoting *State v. Russell*, 125 Wn.2d 24, 63, 882 P.2d 747 (1994)).

i. Strength of the State's Evidence on Each Count

The first factor requires us to evaluate the strength of the State's case for each charge. Where the State presents "strong [evidence] on each count, there is no necessity for the jury to base its finding of guilt on any one count on the strength of the evidence of another." *State v. Bythrow*, 114 Wn.2d 713, 721-22, 790 P.2d 154 (1990).

Phillips contends that the evidence adduced by the State was of differing quality for the assault and solicitation charges because no one saw him fire the shot that struck Contraro, but both cell mates testified to witnessing him offer property to kill Contraro. We disagree. Brandon testified that he did not fire the shot that struck Contraro. Contraro testified that she believed Phillips had shot her and that he was in possession of the firearm just before the shooting. Phillips and Brandon also testified that they were the only two in the house with Contraro at the time she was shot. Both of Phillips's former cell mates testified that Phillips admitted to shooting Contraro. The jury's verdict on the assault charge came down to whether it believed Brandon, Contraro, and Phillips's former cell mates, just as its verdicts on the

solicitation charges came down to whether it believed the former cell mates. The strength of the State's case was similar for each of the charges. This factor does not weigh in Phillips's favor.

### ii. Clarity of the Defenses

The second factor concerns the possibility that failure to sever charges will force defendants to present antagonistic defenses. The defendant bears the burden of showing "specific prejudice" from any possible antagonistic defenses. *State v. Grisby*, 97 Wn.2d 493, 507, 647 P.2d 6 (1982). The likelihood of prejudice is "very small" where the defendant offers identical defenses on each charge. *Russell*, 125 Wn.2d at 64.

Phillips contends that he was prejudiced because he defended against the assault charge on self-defense grounds, but against the solicitation charges on denial grounds. The record does not bear out this claim. Phillips defended against the assault charge at trial by denying that he had shot Contraro. He defended against the solicitation charges by impeaching the State's witnesses, implying with questions that they had fabricated their testimony in order to bargain for reduced sentences. That amounts to a defense of denial. *See State v. Hernandez*, 58 Wn. App. 793, 799, 794 P.2d 1327 (1990), *overruled on other grounds by State v. Kjorsvik*, 117 Wn.2d 93, 812 P.2d 86 (1991). Phillips's defenses were clear and consistent. There was little, if any, possible prejudice to Phillips related to the presentation of his defenses. This factor weighs against severance.

### iii. Jury Instructions

The third factor examines the trial court's jury instructions. Here, the trial court instructed the jury that it "must decide each count separately" and that its "verdict on one count should not control [its] verdict on any other count." Clerk's Papers at 302. We presume that jurors follow such instructions, *State v. Swan*, 114 Wn.2d 613, 661-62, 790 P.2d 610 (1990),

11

meaning that this factor weighs against severance unless the defendant overcomes that presumption. Given that presumption, this factor weighs against severance. *See McDaniel*, 155 Wn. App. at 861.

Phillips argues that we should disregard the presumption that jurors follow instructions, citing *Sutherby*, 165 Wn.2d at 884, and *State v. Harris*, 36 Wn. App. 746, 750, 677 P.2d 202 (1984). These cases, however, were sex offense cases, and both recognized that the unique nature of that type of offense could often lead jurors to disregard the trial court's instructions. *Sutherby*, 165 Wn.2d at 884, 886-87; *Harris*, 36 Wn. App. at 752 (quoting *State v. Saltarelli*, 98 Wn.2d 358, 364, 655 P.2d 697 (1982)). Phillips was not charged with a sex offense, and he makes no argument why the charges made against him were so inflammatory that we should treat them in a manner similar to the offenses at issue in *Sutherby* and *Harris*. His argument fails.

iv. Cross-admissibility

The final factor looks to whether the evidence to support one charge was admissible on the others. There is no prejudice to the defendant in trying offenses together where the State could admit the evidence in each of the separate trials. *State v. Smith*, 74 Wn.2d 744, 756, 446 P.2d 571 (1968), *vacated in part by Smith v. Washington*, 408 U.S. 934, 92 S. Ct. 2852, 33 L. Ed. 2d 747 (1972).

Several rules are relevant to the admissibility of the evidence involved here. ER 402 provides that "[e]vidence which is not relevant is not admissible."[5] ER 403 provides that the

---

[5] Relevant evidence is defined by ER 401, which provides that evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

trial court may exclude even relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury" or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. Finally, ER 404(b) forbids the admission of evidence to show a person's propensity to act a certain way to urge a verdict based on that propensity.[6] However, ER 404(b) provides that evidence "may be admissible for other purposes, such as [to show] proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The list of permissible uses for evidence in ER 404(b) is not exclusive; evidence is admissible under the rule if it "serves a legitimate purpose, is relevant to prove an element of the crime charged, and, on balance, the probative value of the evidence outweighs its prejudicial effect." *State v. DeVries*, 149 Wn.2d 842, 848, 72 P.3d 748 (2003).

Evidence of the solicitation offenses would have been cross-admissible in a separate trial for the assault charges. Evidence that a defendant has attempted to prevent a witness from testifying is relevant and probative because it shows consciousness of guilt. *State v. Kosanke*, 23 Wn.2d 211, 215, 160 P.2d 541 (1945). Accordingly, courts have found that ER 401, ER 403, and ER 404(b) do not require exclusion of such evidence.[7] *State v. McGhee*, 57 Wn. App. 457, 459-62, 788 P.2d 603 (1990).

Phillips argues that evidence of the solicitation offenses was not admissible in the assault trials because his intent to kill Contraro was irrelevant to his state of mind at the time of the

---

[6] ER 404(b) provides, in relevant part, that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."

[7] ER 404(b) encompasses the relevance concepts found in ER 401 and ER 402 as well as the balancing of the probative value of evidence against its prejudicial effect found in ER 403. *DeVries*, 149 Wn.2d at 848.

assault, overly prejudicial, and intended to show his propensity to commit criminal offenses. However, the State was not offering the evidence to show his state of mind at the time of the assault: it offered the evidence to show his consciousness of guilt after the fact. It was relevant and admissible for that purpose. *Konsanke*, 23 Wn.2d at 215. Further, the fact that the evidence was adverse to Phillips does not make it unfairly prejudicial, *State v. Gould*, 58 Wn. App. 175, 183, 791 P.2d 569 (1990), and ER 403 did not require its exclusion. ER 403 requires that the unfairly prejudicial effect of evidence outweigh its probative value before the trial court excludes it. As noted above, this evidence was probative in that it showed Phillips's consciousness of guilt. *McGhee*, 57 Wn. App. at 459. With regard to Phillips's ER 404(b) claim, the State did not introduce the evidence to show that Phillips had a propensity to commit criminal acts. Again, it sought to introduce it for the legitimate purpose of showing Phillips's consciousness of guilt. Neither ER 403 nor ER 404(b) required exclusion of the solicitation evidence. *McGhee*, 57 Wn. App. at 460-62.

In addition, evidence of each solicitation would have been cross-admissible with regard to the other solicitation offense. Evidence that a "[d]efendant committed markedly similar acts of misconduct against similar victims under similar circumstances" is admissible to show a common scheme or plan. *State v. Lough*, 125 Wn.2d 847, 852, 889 P.2d 487 (1995). Here Phillips made the same offer, to kill Contraro in exchange for real property, to two separate cell mates. He thus committed two markedly similar acts of misconduct against the same victim under markedly similar circumstances. Under this authority the evidence of each would be cross-admissible in a trial for the other to show a common scheme or plan.

Phillips contends, though, that under *Harris*, 36 Wn. App. at 751-52, evidence of one solicitation was not cross-admissible with regard to the other under the common scheme or plan

14

exception to ER 404(b). *Harris* applied a restrictive version of the common scheme or plan exception to ER 404(b) incompatible with the Supreme Court's later explanation of the exception in *Lough*. *Compare Harris*, 36 Wn. App. at 751-52 *with Lough*, 125 Wn.2d at 852-61. Evidence of each solicitation offense was admissible in the trial for the other solicitation offense under the holding in *Lough*, and we are bound by that holding.

### v. Balancing the Severance Factors

Balancing the factors used to determine the propriety of severance weighs plainly against it. Phillips has therefore failed to show that the trial court would probably have granted the motion to sever if he had renewed it. With that, he has failed to make the showing of prejudice necessary for an ineffective assistance claim. *See McFarland*, 127 Wn.2d at 337 n.4.

### B.    Failure to Object

Phillips also argues that counsel was ineffective for failing to object to the admission of evidence of the two solicitation offenses for purposes of adjudicating the assault charge and by failing to object to the admission of evidence about each solicitation offense for purposes of adjudicating the charge for the other. We disagree, because Phillips cannot show prejudice.

As discussed above in the severance context, the evidence that Phillips claims his counsel should have objected to was admissible. The trial court, therefore, would have denied any objection, and Phillips cannot show prejudice. *McFarland*, 127 Wn.2d at 337 n.4.

### IV. CONFRONTATION CLAUSE

Finally, Phillips contends that the trial court abridged his right to confront witnesses against him by preventing him from cross-examining Brandon about a conviction for unlawful

15

possession of a firearm. We disagree, because the evidence Phillips wished to present was inadmissible and unduly prejudicial propensity evidence that the trial court properly excluded.[8]

Both the state and federal constitutions guarantee criminal defendants the right to confront witnesses against them.[9],[10] U.S. CONST. amend. VI; WASH. CONST. art. I, § 22. "'[A] primary interest secured by [the confrontation clause] is the right of cross-examination.'" *Davis v. Alaska*, 415 U.S. 308, 315, 94 S. Ct. 1105, 39 L. Ed. 2d 347 (1974) (quoting *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S. Ct. 1074, 13 L. Ed. 2d 934 (1965)). The right to cross-examine witnesses has historically included the right to discredit them through impeachment with, among other things, evidence of prior criminal convictions. *Davis*, 415 U.S. at 316.

ER 611(b) provides the trial court with the discretion to limit the scope of cross-examination. *State v. Darden*, 145 Wn.2d 612, 620-21, 41 P.3d 1189 (2002). A trial court abuses its discretion when it exercises that discretion in a manifestly unreasonable manner or based on untenable grounds or for untenable reasons. *State v. Sisouvanh*, 175 Wn.2d 607, 623, 290 P.3d 942 (2012) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). Impermissibly limiting the scope of cross-examination in violation of the confrontation clause would be an abuse of the trial court's discretion. *State v. Perez*, 137 Wn. App. 97, 105, 151 P.3d 249 (2007).

---

[8] We do not address the State's waiver argument because we hold that the trial court did not err in limiting Phillips's cross-examination of Brandon.

[9] Under the due process clause of the Fourteenth Amendment to the United States Constitution, the Sixth Amendment's confrontation clause applies in state criminal proceedings. *Pointer v. Texas*, 380 U.S. 400, 406, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

[10] Phillips does not argue that article I, section 22 provides greater protection than the Sixth Amendment. Consequently, we analyze his claim only under the Sixth Amendment. *State v. Gonzalez-Morales*, 91 Wn. App. 420, 424 & n.2, 958 P.2d 339 (1998).

Whether the trial court has impermissibly restricted cross-examination, thereby infringing the defendant's right of confrontation, depends on two factors. The first is the relevance of the evidence. *Darden*, 145 Wn.2d at 621 (citing *State v. Hudlow*, 99 Wn.2d 1, 15, 659 P.2d 514 (1983)). The second is the balance between the defendant's need for relevant and probative information and the State's compelling interest in excluding evidence so prejudicial that it disrupts the "fact-finding process at trial." *Darden*, 145 Wn.2d at 622 (citing *Hudlow*, 99 Wn.2d at 15).

We hold that the trial court did not err by limiting Phillips's ability to cross-examine Brandon. Phillips's counsel made clear that he wanted to inquire, not about the conviction itself, but about the facts underlying the conviction. Counsel further made clear that he wanted to ask about those underlying facts, not for impeachment purposes, but in order to show the jury Brandon's alleged propensity to shoot at other people. In short, counsel wanted the court's leave to ask the jurors to make the impermissible inference that Phillips was not guilty beyond a reasonable doubt because Brandon was the type of person who committed assault with a firearm.

Washington has expressed its compelling interest in preventing jurors from making that sort of inference in the form of ER 404(b).

> ER 404(b) reflects the long-standing policy of Anglo-American law to exclude most character evidence because "it is said to weigh too much with the jury and to so overpersuade them. . . . The overriding policy of excluding such evidence, despite its admitted probative value, is the practical experience that its disallowance tends to prevent confusion of issues . . . and undue prejudice."

*State v. Slocum*, 183 Wn. App. 438, 456, 333 P.3d 541 (2014) (alteration in original) (quoting *Michelson v. United States*, 335 U.S. 469, 476, 69 S. Ct. 213, 93 L. Ed. 168 (1948)). Assuming that Phillips wanted to adduce relevant evidence, the State had a compelling interest, given form

17

in ER 404(b), in keeping propensity evidence from the jury. The trial court recognized this and properly excluded the evidence.

Further, confrontation clause violations are subject to harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). We may affirm any conviction tainted by a confrontation clause violation where the error appears harmless beyond a reasonable doubt. *Van Arsdall*, 475 U.S. at 684. Among the factors relevant to the harmless error analysis in this context are the importance of the witness's testimony in the prosecution's case, whether the witness provided only cumulative testimony, whether other evidence corroborated the witness on material points, the extent of cross-examination permitted, and the strength of the State's case. *Van Arsdall*, 475 U.S. at 684.

Even if we assumed that the trial court erred, the error was harmless. Phillips was the one last seen by Contraro with the gun used to shoot her; he had held the gun to her head, heart, and stomach just before it fired a bullet into her leg. Contraro testified that she believed that Phillips had shot her, and Phillips himself told two different cell mates that he had done so. Further, the jury heard that Phillips had attempted to contract for Contraro's murder at the hands of two different cell mates, and one of them testified that Phillips specified that he wanted her dead to eliminate his legal difficulties. In the face of this overwhelming untainted evidence of Phillips's guilt of assault, any alleged error in restricting Phillips's cross-examination of Brandon was harmless.

## CONCLUSION

We affirm Phillips's convictions for domestic violence first degree assault, domestic violence fourth degree assault, unlawful possession of a firearm, and domestic violence criminal

solicitation to commit first degree murder.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

BJORGEN, J.

We concur:

JOHANSON, C.J.

SUTTON, J.